9 F.3d 1060
 DELOITTE NORAUDIT A/S, Plaintiff-Appellee,
v.
DELOITTE HASKINS & SELLS, U.S. and J. Michael Cook,
individually and as representatives of a defendant class
consisting of (i) all members and member firms of Deloitte
Haskins & Sells International as of July 1989 which
themselves or through their successors became members or
member firms of Deloitte Ross Tohmatsu International, and
(ii) Deloitte Haskins & Sells International; Deloitte &
Touche and J. Michael Cook, individually and as
representatives of a defendant class consisting of (i) all
members and member firms of Deloitte Ross Tohmatsu
International which are successors of members or member
firms of Deloitte Haskins & Sells International, and (ii)
Deloitte Ross Tohmatsu International, Defendants-Appellants.
 No. 165, Docket 93-7271.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 30, 1993.
Decided Nov. 22, 1993.
 
 Craig I. Celniker, New York City (Baker & McKenzie, Arthur W. Rovine, of counsel), for defendants-appellants.
 William M. Murphy, New York City (Robinson Parnass Murphy & McDonald, of counsel), for plaintiff-appellee.
 Before FEINBERG, CARDAMONE and ALTIMARI, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 Defendants-appellants Deloitte Haskins & Sells, U.S. (DHS-US), Deloitte & Touche and J. Michael Cook (Cook) appeal from a March 1993 order of the United States District Court for the Southern District of New York, Thomas P. Griesa, J., denying appellants' motion to stay litigation and to compel arbitration of claims asserted against them by plaintiff-appellee Deloitte Noraudit Oslo A/S (Noraudit). The crux of Noraudit's suit is its claim that it has the right to use the name "Deloitte" in connection with its accounting practice in Norway. The sole issue on appeal is whether Noraudit is required to submit this claim to arbitration. We hold that it is, for reasons given below. We therefore reverse and remand for further proceedings.
 
 I. Background
 
 2
 A. The Global Merger, Prior Litigation and Settlement
 
 
 3
 In 1976, the accounting firm of Deloitte U.S. and its worldwide affiliates formed an international association called Deloitte Haskins & Sells International (DHSI). The affiliates entered into a series of agreements, the last in October 1988 (the Memorandum of Agreement). Plaintiff-appellee Noraudit was the regional affiliate of DHSI in Norway.
 
 
 4
 This dispute started with DHSI's July 1989 decision to merge with another international accounting organization--Touche Ross International (TRI). The two organizations agreed to merge globally by instructing their respective regional affiliates to negotiate local mergers.
 
 
 5
 The proposed merger hit a major snag when DHSI's regional affiliate in the United Kingdom (DHS-UK) decided to merge with rival firm Coopers & Lybrand instead of with the United Kingdom affiliate of TRI. According to Section 11.2 of the 1988 Memorandum of Agreement, all rights to the use of the name "Deloitte" were wholly vested in DHS-UK.[1] Thus, the continued use of the name "Deloitte" by DHSI and its member firms was threatened by the decision of DHS-UK to leave DHSI rather than participate in the global merger with TRI. Litigation then ensued both in the United States and in the United Kingdom.
 
 
 6
 These litigations were settled with the signing of an agreement effective January 1990 (the 1990 Agreement) which, among other things, gave DHSI member firms limited use of the name "Deloitte" and enabled DHSI to consummate the global merger with TRI.
 
 
 7
 According to appellants, the 1990 Agreement was signed by defendant-appellant Cook as Chairman of the Executive Committee of DHSI on behalf of all DHSI member firms, pursuant to the specific authority of the Executive Committee to "conduct the affairs of [DHSI]," and was approved by more than 75 percent of the total voting interests of the member firms of DHSI. Every member firm of DHSI, including Noraudit, received a copy of the 1990 Agreement and was asked to approve or object to it. No member firm of DHSI objected to the 1990 Agreement.
 
 
 8
 Noraudit apparently had its own problems with the global merger. As already noted, the global merger between DHSI and TRI was to take place through a series of local mergers between affiliates of the two organizations. Noraudit was unable to negotiate an arrangement with the Norwegian affiliate of TRI, Forum Touche Ross. In early 1990, Forum Touche Ross rather than Noraudit was selected as the Norwegian affiliate of the combined entity, Deloitte Ross Tohmatsu International (now known as Deloitte Touche Tohmatsu International).
 
 B. Proceedings in the District Court
 
 9
 In obvious conflict with the new combined entity and its designated affiliate in Norway, Forum Touche Ross, Noraudit continued to use the name "Deloitte" in connection with its accounting practice in Norway. In May 1991, Noraudit brought the instant litigation in the Southern District seeking monetary and injunctive relief against defendants-appellants for breach of contract and interference with contractual relations, and a declaration of Noraudit's right to use the name "Deloitte" in Norway. Appellants then sought to compel arbitration of the controversy on the basis of an arbitration clause in the 1990 Agreement. In the district court, Noraudit contended--and the court agreed--that Noraudit's claims arise under the 1988 Memorandum of Agreement, that the 1990 Agreement merely settled the earlier litigations, and that because Noraudit was neither a party to those litigations nor a signatory to the 1990 Agreement it is not bound by the arbitration clause in the latter agreement. We turn to examine these two agreements.
 
 C. The Agreements
 1. The Memorandum of Agreement
 
 10
 The 1988 Memorandum of Agreement conferred the right to use the name "Deloitte" on all member firms of DHSI. As indicated above, this was the last in a series of such agreements, commencing in 1976. Article 11 is entitled "Use of the Name Deloitte Haskins & Sells." Section 11.1 requires each member firm to "reaffirm[ ] that the right to use the name Deloitte Haskins & Sells is subject to the conditions and obligations described in this Agreement." Section 11.4 confers on each member firm the right to use the name "so long as such firm shall be a party to this Agreement." Section 11.2 provides that "all rights in and to the use of [the name Deloitte] are wholly vested in [DHS-UK]...." Thus, it appears that the withdrawal of DHS-UK from DHSI in 1989 could have terminated the rights of the remaining members of DHSI, including Noraudit, to use the name "Deloitte." Article 6 provides for an Executive Committee to act as the governing body of DHSI. The Memorandum of Agreement contains no arbitration clause.
 
 2. The 1990 Agreement
 
 11
 As we have noted, the 1990 Agreement settled the litigations concerning DHS-UK's decision to withdraw from DHSI and to take the name "Deloitte" with it. However, the 1990 Agreement is a broad-ranging document. Thus, although Paragraph 13 of the 1990 Agreement expressly preserves prior agreements--including the 1988 Memorandum of Agreement--the 1990 Agreement contains provisions, e.g., Paragraphs 4, 6-8 and 10, that regulate the use of the name "Deloitte" internationally.
 
 
 12
 Paragraph 4 gives DHSI member firms, identified in exhibit A of the Agreement, the "right to use the name Deloitte ... in its Professional Practice in its territory, free of Interference by DHS-UK or Coopers." Noraudit is identified in exhibit A as the DHSI affiliate in Norway. Paragraph 6(d) gives the international organization and member firms resulting from the combination of DHSI and TRI the right to use the name "Deloitte" in their respective territories. Paragraph 7 conditions the right of DHSI member firms to use the name "Deloitte" on their giving effect to the 1990 Agreement. Paragraph 8 regulates the use of the name in any territory where no affiliate had been established as of the effective date of the 1990 Agreement, and Paragraph 10 regulates the use of the name in Europe.
 
 
 13
 Finally, the 1990 Agreement contains an arbitration clause in Paragraph 12, which is reproduced in pertinent part in the margin.[2] Paragraph 12(e) requires arbitration of "any Dispute or any other disagreement concerning this Agreement." The term "Dispute" is defined in Paragraph 12(a) as "disputes which might arise between DHS-UK or Coopers on the one hand and DHSI, any DHSI Member Firm or [Touche Ross (UK) ] on the other hand concerning matters contemplated hereunder." The parties agree that this controversy is not a "Dispute" under the 1990 Agreement. The parties disagree on the meaning of the phrase "any other disagreement" and the applicability of the clause to the present controversy.
 
 II. Discussion
 
 14
 The Federal Arbitration Act, 9 U.S.C. Secs. 1 et seq. (1988), requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation. Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir.1987). The federal policy favoring arbitration is even stronger in the context of international transactions. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 629-31, 105 S.Ct. 3346, 3355-56, 87 L.Ed.2d 444 (1985); Scherk v. Alberto-Culver Co., 417 U.S. 506, 516-18, 94 S.Ct. 2449, 2455-56, 41 L.Ed.2d 270 (1974); David L. Threlkeld & Co. v. Metallgesellschaft Ltd., 923 F.2d 245, 248 (2d Cir.), cert. dismissed, --- U.S. ----, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991).
 
 
 15
 This Court has recently noted that "[i]n determining the arbitrability of a particular dispute, a court must decide 'whether the parties agreed to arbitrate, and, if so, whether the scope of that agreement encompasses the asserted claims.' " Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F.2d 42, 45 (2d Cir.1993) (quoting from David L. Threlkeld & Co., 923 F.2d at 249). Bearing in mind the policies discussed above, we turn to this two-step inquiry.
 
 A. Agreement to Arbitrate
 
 16
 Noraudit argues that it is not bound by the arbitration provisions of the 1990 Agreement because it was not a party to the litigations or to the Agreement. Noraudit claims that its rights derive from the 1988 Memorandum of Agreement, which contains no arbitration clause. Further, it argues that the 1988 Memorandum of Agreement was never properly terminated and was preserved by Paragraph 13 of the 1990 Agreement. Thus, Noraudit's position is that neither the 1990 Agreement nor the arbitration clause therein bears upon this litigation.
 
 
 17
 Appellants answer that DHSI no longer exists, and that the 1988 Memorandum of Agreement is thus a nullity. Moreover, in addition to settling the litigation, the 1990 Agreement regulates the use of the name "Deloitte" internationally, so that any rights to the use of the name necessarily derive from the 1990 Agreement. Appellants assert that DHSI negotiated and executed the 1990 Agreement as agent for its member firms, including Noraudit, and then sent a form seeking their approval or objection. According to appellants, over 75 percent of the voting interests expressly ratified the 1990 Agreement and none objected to it. Finally, appellants argue that Noraudit, having enjoyed the use of the name "Deloitte" on the basis of the 1990 Agreement, is estopped from seeking to avoid its obligations under that agreement, including the obligation to arbitrate.
 
 
 18
 In considering these arguments, we note that "the Federal Arbitration Act carefully limits the role of the courts in considering motions to compel arbitration." Conticommodity Servs. Inc. v. Philipp & Lion, 613 F.2d 1222, 1224 (2d Cir.1980). "Thus, section 4 [of the Act] directs a district court to compel arbitration unless the 'making' of an arbitration agreement, or one party's 'failure, neglect, or refusal' to arbitrate is in question." McAllister Bros. v. A & S Transp. Co., 621 F.2d 519, 522 (2d Cir.1980). While it is true that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960), we have held that "a party may be bound by an agreement to arbitrate even in the absence of a signature.... [O]rdinary principles of contract and agency determine which parties are bound by an agreement to arbitrate." McAllister Bros., 621 F.2d at 524 (citing A/S Custodia v. Lessin Int'l, Inc., 503 F.2d 318, 320 (2d Cir.1974); Fisser v. Int'l Bank, 282 F.2d 231, 234-35 (2d Cir.1960)).
 
 
 19
 Applying these principles to this case, we believe that appellants have the stronger arguments, particularly those based upon estoppel. The district court noted that Noraudit "did not sign the document [the 1990 Agreement]" (emphasis in original), and the court's use of emphasis indicates that it relied heavily on that fact. However, our decision in McAllister made clear that this is not necessarily controlling. Id. Pursuant to the 1990 Agreement, Noraudit has received the benefits secured for all member firms by DHSI's chosen representatives in negotiating the 1990 Agreement. The 1989 litigations between DHSI and DHS-UK threatened the rights of all member firms, including Noraudit, to use the name "Deloitte" because DHS-UK had superior rights to the use of the name pursuant to Section 11.2 of the 1988 Memorandum of Agreement. Further, the parties clearly intended to bind all DHSI members under the 1990 Agreement. Indeed, DHS-UK could not protect its property rights in a valuable asset, the name "Deloitte," by entering into an agreement that was not binding on all of the member firms. The 1990 Agreement expressly conditions the continuing right of DHSI member firms to use the name "Deloitte" on their adherence to the terms of the Agreement. Paragraph 4 of the 1990 Agreement specifically preserves Noraudit's right to use the name by reference to exhibit A, which lists Noraudit as the Norwegian affiliate. Paragraph 7 conditions this right on Noraudit giving effect to the 1990 Agreement. Even assuming, as Noraudit claims, that it did not receive a copy of the 1990 Agreement until shortly after it had been executed, it is undisputed that Noraudit did indeed receive a copy and did not object thereafter.[3]
 
 
 20
 We conclude that Noraudit is bound by the arbitration section of the 1990 Agreement. Noraudit failed to object to the Agreement when it received it and offers no persuasive reason for its inaction. In addition, Noraudit knowingly accepted the benefits of the Agreement through its continuing use of the name "Deloitte." Thus, Noraudit is estopped from denying its obligation to arbitrate under the 1990 Agreement. We express no view, however, on the substantive issues raised by the parties regarding Noraudit's right to use the "Deloitte" name. Those are properly left for decision in the arbitration forum.[4]
 
 B. Scope of the Arbitration Clause
 
 21
 The district court also accepted Noraudit's argument that the arbitration provisions of the 1990 Agreement did not apply to this dispute. Paragraph 12(e), see note 2 supra, provides for "mandatory binding arbitration," of "any Dispute or any other disagreement concerning this Agreement." Noraudit argues that this phrase is limited to conflicts involving DHS-UK or Coopers in the specific geographic areas at issue in the litigation (U.K., Channel Islands, and the Netherlands). Appellants counter that while the term "Dispute" refers only to problems involving DHS-UK or Coopers, the term "any other disagreement" applies to any of the myriad of other problems that might arise concerning rights to the use of the name "Deloitte."
 
 
 22
 The principles governing whether the present controversy is within the scope of the arbitration clause are clear. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." Mitsubishi Motors Corp., 473 U.S. at 626, 105 S.Ct. at 3353 (quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-942, 74 L.Ed.2d 765 (1982)); see also S.A. Mineracao da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190, 194 (2d Cir.1984) (federal policy "requires us to construe arbitration clauses as broadly as possible").
 
 
 23
 These principles suggest that arbitration is required here. The heart of the 1990 Agreement was the use of the name "Deloitte" not just by the principals who were the actual signatories but also by the member firms, including Noraudit. Paragraph 12, see note 2 supra, on its face covers controversies concerning the use of the name "Deloitte." Subparagraph (a) makes clear that "it is not practicable to foresee all factual situations which could cause interference with the permitted use of the name Deloitte or all procedures which could sensibly reduce or avoid interference," and recognizes that "it is desirable to have a vehicle for ... implementing the intent and purposes of this Agreement, and for otherwise reducing tensions that might arise." Subparagraph (e) requires arbitration of both "Disputes" and "any other disagreement concerning [the 1990 Agreement]." We have already noted that the 1990 Agreement is a broad-ranging document that regulates the use of the name "Deloitte" internationally and, necessarily, affects all those who use the name. Likewise, the phrase "any other disagreement" is a broad one, reasonably covering all controversies regarding use of the name "Deloitte" that might arise among the many entities whose rights and duties were affected by the 1990 Agreement. Noraudit apparently argues that the phrase "any other disagreement" is simply superfluous, a construction of a contract not ordinarily favored. Even if we had doubts regarding the scope of subparagraph (e)--and we do not--we are instructed by Mitsubishi to resolve them "in favor of arbitration." 473 U.S. at 626, 105 S.Ct. at 3353. We hold that the controversy now before us is within the scope of Paragraph 12(e).
 
 
 24
 Accordingly, we reverse the order of the district court refusing to stay the litigation and to compel arbitration and we remand for further proceedings.[5]
 
 
 
 [1]
 Conversely, DHS-US held the rights to the names Haskins and Sells
 
 
 [2]
 (a) Each of DHS-UK, DHS-US and DHSI recognises [sic] that it is not practicable to foresee all factual situations which could cause interference with the permitted use of the name Deloitte or all procedures which could sensibly reduce or avoid interference. Each also agrees that it is desirable to have a vehicle for private resolution of problems or disputes which might arise between DHS-UK or Coopers on the one hand and DHSI, any DHSI Member Firm or [Touche Ross (UK) ] on the other hand concerning matters contemplated hereunder (hereinafter referred to as a "Dispute"), for considering further procedures which can be adopted, for implementing the intent and purposes of this Agreement, and for otherwise reducing tensions that might arise
 * * *
 (e) If any Dispute or any other disagreement concerning this Agreement is not resolved by the Advisory Group or voluntary arbitration, each party hereto agrees that such Dispute or disagreement will be resolved by mandatory binding arbitration pursuant to sub-clause (f) hereof rather than by litigation.
 (f) Any arbitration shall be conducted in accordance with the rules and procedures of the Stockholm Chamber of Commerce. (emphasis supplied)
 
 
 [3]
 Paragraph 16 of the 1990 Agreement prohibits, except for authorized press releases, statements by the parties "to any third party ... regarding" the 1990 Agreement. In view of these restrictions on disclosure to any third party, Noraudit's receipt of a copy of the 1990 Agreement indicates that it was not considered to be a "third party" stranger to the Agreement
 
 
 [4]
 We are told that under a supplemental agreement the rules of the London Court of International Arbitration apply rather than those of the Stockholm Chamber of Commerce. We assume that the district court will decide this issue in the first instance if the parties cannot agree
 
 
 [5]
 Ordinarily, we would also provide that the district court compel arbitration. However, the record discloses that there may be an unresolved issue regarding the district court's jurisdiction over Noraudit's action. We assume that this issue will be promptly resolved in the district court