In the Matter of the Arbitration between ANDOLINA SHIPPING LTD., Petitioner,

v.

TBS EUROLINES LTD., Respondent.

No. 99 CIV 3319 SHS.

United States District Court, S.D. New York.

Feb. 23, 2000.

James Howard Hohenstein, Haight, Gardner, Holland & Knight, New York City, for petitioner.

Tulio R. Prieto, Cardillo & Corbett, New York City, for respondent.

## OPINION

STEIN, District Judge.

The question for resolution on this petition to appoint an arbitrator and compel arbitration pursuant to 28 U.S.C. § 1333 and 9 U.S.C. §§ 1 and 4 is whether the parties entered into a binding agreement to arbitrate. Petitioner Andolina Shipping Ltd. ("Andolina"), which seeks arbitration in New York against respondent TBS Eurolines Ltd. ("Eurolines"), believes they have. Eurolines contends that the parties did not enter into a binding charter party and that, consequently, no agreement to arbitrate was made. For the reasons set forth below, this Court finds that no charter party was formed and therefore denies Andolina's petition.

## BACKGROUND

The parties have submitted the dispute to the Court on the basis of the facts set forth in the pleadings and affidavits. Those facts are as follows: On or about February 8, 1999, Eurolines expressed an interest to Andolina in chartering a vessel.[1] Negotiations commenced three days later, when Eastern sent Andolina's firm offer to Globe for the charter of Andolina's vessel, M/V WINDSONG. The next day—February 12—Andolina directed the vessel to sail from Piraeus, Greece in order to meet the anticipated delivery date in Antwerp, Belgium.

After a series of counteroffers were exchanged, the parties reached agreement on the main terms of the charter party—a "fixture"—on February 16, 1999. Seatrader Maritime confirmed the fixture by telex and Primera received a pro forma charter party on February 17. The fixture of the vessel, however, was "subject to reconfirmation" by Eurolines within 24 hours. It is common practice within the

1. The parties negotiated with each other through a series of brokers. The main broker for Eurolines was Globe Maritime Ltd. ("Globe") in London. Globe received instructions from Eurolines' New York broker, TBS Shipping Services, Inc. ("TBS–NY"). The main broker for Andolina was Eastern Medi-terranean Maritime (London) Ltd. ("Eastern"). Eastern received instructions from Andolina's broker in Greece, Seatrader Maritime, which received its instructions from Andolina's general agents, Primera Maritime (Hellas) Ltd. ("Primera").

shipping industry to subject the fixture either to the charterer's reconfirmation, as in this case, or to approval of the charter's board of directors. In anticipation of Eurolines' reconfirmation of the fixture, the parties continued to negotiate the details of the charter party and apparently came to agreement on the details on February 19. Clause 74 of the pro forma charter party provided that "[a]ll disputes arising out of [the] contract shall be arbitrated at New York ... and subject to U.S. law...."

Although Eurolines was originally to have "lifted the subject," *i.e.*, reconfirmed the fixture, on February 17, 1999, it requested and received from Andolina four consecutive extensions of the deadline for reconfirmation.[2] Andolina asserts that Eurolines represented these extensions as necessary to receive "European Union" approval to pay certain transport charges at the contemplated discharge port, which approval Andolina understood to be a "minor issue." Eurolines denies this representation, maintaining that it asked for the extensions to reconfirm the fixture because of unresolved issues with its sub-charterer.

Upon the vessel's arrival in Antwerp on February 23, 1999, Eurolines advised Andolina that the subject was not lifted on the charter party and that it would not accept delivery of the vessel. Andolina protested and subsequently advised Eurolines of its intent to demand arbitration. Upon Eurolines' refusal to appoint an arbitrator, Andolina filed and served this petition.

## DISCUSSION

As noted above, this petition to compel arbitration and appoint an arbitrator is brought pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 and 4, and 28 U.S.C. § 1333. Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, provides in relevant part as follows:

A party aggrieved by the alleged failure ... of another to arbitrate under a written agreement for arbitration may petition any United States district court which ... would have jurisdiction ... in admiralty of the subject matter of a suit arising out of the controversy ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof.... [I]f the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue.

*See Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,* 9 F.3d 1060, 1063 (2d Cir.1993) (" 'Thus, section 4 ... directs a district court to compel arbitration unless the "making" of an arbitration agreement ... is in question.' " (citation omitted)).

 Andolina's petition to compel arbitration is based on an arbitration clause contained in the pro forma charter party between the parties. Therefore, the issue before this Court is whether the charter party was binding on the parties. "[A] charter party is merely a contract, subject to all the rules and requirements of contract law." *Great Circle Lines, Ltd. v. Matheson & Co.,* 681 F.2d 121, 124 (2d Cir.1982). "However, where ... the contract is one of charter party, established practices and customs of the shipping industry inform the court's analysis of what the parties agreed to." *Samsun Corp. v. Khozestan Mashine Kar Co.,* 926 F.Supp. 436, 439 (S.D.N.Y.1996).

 According to federal admiralty law, a charter party is formed only when the owner and charterer agree to its essential terms. *See Great Circle Lines, Ltd.,* 681 F.2d at 124–25. "A 'recap' communication, or 'fixture,' is recognized throughout the shipping industry as an agreement to a charter party's essential

---

**2.** Andolina agreed to extensions from February 17 to February 18, from February 18 to February 19, from February 19 to February 22, and on February 22 from 10:00 a.m. London time to 12:00 p.m. New York time.

terms." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,* 16 F.Supp.2d 326, 329 (S.D.N.Y.), *modified in part,* 182 F.R.D. 97 (S.D.N.Y.1998). "The fixture is considered a binding contract, even if it is 'subject to details'—that is, even if the less important terms of the charter party remain to be agreed upon. Moreover, a fixture 'subject to details' does not create a condition subsequent that can defeat the duty to perform under the contract. Rather, it indicates an intention to continue negotiations, provided that the pro forma charter party will govern if the parties do not reach further agreement on the details." *Matter of Herlofson Management A/S and Ministry of Supply, Kingdom of Jordan,* 765 F.Supp. 78, 79 n. 1 (S.D.N.Y. 1991) (citing *Great Circle Lines, Ltd.,* 681 F.2d at 126).

 Andolina argues that the pro forma charter party is binding because the parties entered into a fixture for charter of the M/V WINDSONG. Even though Eurolines never reconfirmed the fixture, Andolina asserts that, in light of Eurolines' representations with respect to its requests for extensions, this "subject to reconfirmation" was merely a detail. This argument must fail. " '[W]hen an offer or a counteroffer is accepted subject to a condition or reservation, neither party is bound to an agreement until the condition or reservation has been withdrawn or satisfied.' " *United States v. Newport News Shipbuilding & Dry Dock Co.,* 571 F.2d 1283, 1286 (4th Cir.1978) (citation omitted); *see Krumme v. Westpoint Stevens Inc.,* 143 F.3d 71, 83 (2d Cir.) ("Under New York law, ... 'an acceptance subject to other terms and conditions [is] equivalent to an absolute rejection of the offer.' " (citation omitted)), *cert. denied,* —— U.S. ——, 119 S.Ct. 592, 142 L.Ed.2d 534 (1998).

Andolina's reliance on the U.S. District Court decision in *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.* is unconvincing. In that decision, the court equated the approval of the charter by the charterer's board of directors as a "subject detail." 16 F.Supp.2d 326, 339. However, the evidence in the present case shows that Andolina understood Eurolines' reconfirmation of the fixture to be a condition precedent to forming the charter party. Specifically, the February 18, 1999 telex from Eastern (Andolina's broker) extending the time for reconfirmation reads as follows:

> OWNERS ARE PREPARED TO EXTEND DECLARATION OF SUBS UNTIL 1600 NEW YORK TODAY—ON THE CLEAR UNDERSTANDING THAT IF CHARTERPARTY TERMS/DETAILS HAVE NOT BEEN AGREED PRIOR TO LIFTING SUBS AND IF, AFTER LIFTING OF SUBS, OWNERS /CHTRS FAIL TO AGREE THE CHARTERPARTY THEN THE SHIP IS NOT REPEAT NOT FIXED.

The words of Andolina's broker in this telex, combined with the fact that Andolina repeatedly allowed extensions, indicates that it fully recognized that reconfirmation was critical to formation of the charter party.

Andolina cites *Victor Shipping and Trading, Ltd. v. Metal Transp. Corp.,* 583 F.Supp. 217 (S.D.N.Y.), *aff'd mem.,* 751 F.2d 373 (2d Cir.1984), for the proposition that Eurolines had a good faith duty to reconfirm the charter and contends that Eurolines was not acting in good faith. In *Victor Shipping,* the court found an implied duty to make a good faith effort to "confirm stem," *i.e.,* confirm that the cargo would be available. 583 F.Supp. at 220. It is well-established that a covenant of good faith and fair dealing is implied in all contracts. *See, e.g., Travellers Int'l. A.G. v. Trans World Airlines,* 41 F.3d 1570, 1575 (2d Cir.1994) ("Under New York law, the implied covenant of good faith and fair dealing inheres in every contract."); *Geogas Trading, S.A. v. Mitsui & Co.,* No. 95 Civ. 0190, 1996 WL 71505, at *6 (S.D.N.Y. Feb. 20, 1996) (same, in maritime context). Nevertheless, Andolina has failed to show

a lack of good faith on the part of Eurolines.

█ It is apparent that Andolina fully expected the subject to be lifted, and in fact based its final agreement to extend the deadline for reconfirmation on its understanding that Eurolines had obtained verbal approval to lift the subject.[3] Further, it was encouraged by Eurolines' instruction to its broker on February 22 to keep Andolina "firm behind them." Still, these facts do not indicate a lack of good faith; rather, they indicate that Eurolines was attempting to close the deal and needed Andolina to "stand firm" in order to make these efforts worthwhile. Andolina was well aware of its potential loss should these efforts prove unfruitful.

Finally, Andolina argues that the arbitration clause in the charter party should be enforced on the basis of promissory estoppel. This doctrine is inapposite in determining the validity of the arbitration agreement and will not be addressed further.

## CONCLUSION

For the foregoing reasons, Andolina's petition to compel arbitration and appoint an arbitrator is denied.

---

3. The telex granting the extension for reconfirmation until 12:00 p.m. New York time on February 22 reads: "AS PER TELECON OWS GRANTED CHRS EXT UNTILLNY TIME NOON TODAY ON THE BASIS CHRS HAD 'THE AGREEMENT' VERBALLY."