

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00220-CV

———————————————

TELSMITH, INC., Appellant

V.

37 BUILDING PRODUCTS, LTD., Appellee

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. C2019019

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Telsmith, Inc. appeals the denial of its motion to compel arbitration of the claims brought by 37 Building Products, Ltd. (37BP). Telsmith argues that even though 37BP did not sign the warranties that contained the arbitration clauses in question, 37BP should nonetheless be bound to those warranties and compelled to arbitrate under the theory of "direct-benefits estoppel." Telsmith's arguments revolve around the two forms of that theory.

First, Telsmith contends that 37BP should be estopped from denying the warranties because 37BP's claims necessarily rest and depend upon the terms of the warranties. But the substance of 37BP's claims shows that they have little to do with the content of the manufacturer's warranties, and this form of estoppel therefore does not apply.

Second, Telsmith contends that another form of direct-benefits estoppel should apply because 37BP knowingly accepted substantial benefits from the warranties—namely, repair services. We hold that though 37BP accepted these benefits, it did not do so with knowledge of the warranty documents or their terms. This form of direct-benefits estoppel thus does not apply either. We therefore affirm the trial court's denial of arbitration.

## I.   BACKGROUND

Telsmith manufactures rock-crushing machines. In early 2017, 37BP was in need of rock-crushing equipment. 37BP requested price quotes from various

companies, including McCourt & Sons Equipment, Inc., a Texas-based equipment dealer. 37BP eventually agreed to buy two Telsmith machines from McCourt for over two million dollars. McCourt then obtained one of the machines from an Ohio-based equipment dealer, and it obtained the other directly from Telsmith. Telsmith employees installed both machines at 37BP's facility in October 2017.

This transaction entailed a series of contracts. One set of contracts was between Telsmith and its equipment dealers (the Dealer Agreements). Both of the Dealer Agreements incorporated Telsmith's warranties for the machines, and those warranties had arbitration clauses. Another set of contracts was between McCourt and 37BP. Those contracts provided that McCourt "passes through to Customer the manufacturer's warranty, if applicable." Thus, 37BP had two Telsmith crushers but no agreement directly with Telsmith.

The parties now dispute whether—and to what extent—37BP was made aware of the warranties and the Dealer Agreements. Telsmith submitted an affidavit from an employee who averred that during installation of the machines, he informed two 37BP employees that the machines had a one-year warranty. Further, during the installation, a Telsmith employee signed a checklist that stated, "Important: Mail Signed Checklist within 7 days of start-up to maintain warranty." However, no party suggests that 37BP was actually provided with copies of the Dealer Agreements or the warranties they contained, and no party contends that 37BP was apprised of the existence of the warranty documents or their terms.

Telsmith also observes that there were two manuals for the machines that contained a similar set of warranties. However, it is undisputed that a customer signature was required to accept those warranties and that 37BP never signed them. Further, 37BP denied that it received the manuals at all; 37BP offered internal Telsmith emails confirming that there was nothing to show that the manuals were sent to 37BP in the first place.

Over the months that followed installation, 37BP made several service calls to McCourt to repair problems with the crushers. McCourt personnel repaired the problems and then received reimbursement from Telsmith for the cost of parts and labor. A Telsmith technician testified that in spring 2018, 37BP began to make service requests directly to him, and he performed at least five service visits to 37BP between March and September 2018. According to Telsmith's affidavits, 37BP never inquired about payment for Telsmith's repair services, and Telsmith never sent 37BP a bill for the services, which Telsmith valued at $35,000.

In January 2019, 37BP filed this suit against McCourt and Telsmith. 37BP alleged that recurrent problems with the crushers had forced it to suspend operations at its quarry. 37BP further alleged that the rock crushers were incurably defective and that the defendants had misrepresented the machines' qualities and capabilities during the sales process. Telsmith moved to compel arbitration, arguing that even though 37BP had not signed the warranties, 37BP should nonetheless be bound to the arbitration clauses in those warranties under a theory of direct-benefits estoppel.

37BP resisted arbitration, asserting that direct-benefits estoppel should not apply. The trial court denied the motion to compel, and this appeal ensued.

## II.    DISCUSSION[1]

We review the denial of a motion to compel arbitration for an abuse of discretion. *Brand FX, L.L.C. v. Rhine*, 458 S.W.3d 195, 203 (Tex. App.—Fort Worth 2015, no pet.). In our review, we defer to the trial court's factual determinations that are supported by evidence but review the trial court's legal determinations de novo. *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013). We review de novo whether an arbitration agreement is enforceable against a nonsignatory. *See id.*

---

[1]As an initial matter, the parties have questioned whether we should apply Delaware law or Texas law, because while the suit was filed in Texas, the manufacturer's warranties provide that they should be governed by Delaware law. "We need not decide which state's laws apply unless those laws conflict." *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008). The parties have not suggested there is such a conflict, and our research has not revealed one. Just the opposite, we have found multiple Delaware cases that apply direct-benefits estoppel in a manner consistent with Texas's approach. *See Aveta Inc. v. Cavallieri*, 23 A.3d 157, 182 (Del. Ch. 2010); *NAMA Holdings, L.L.C. v. Related World Mkt. Ctr., L.L.C.*, 922 A.2d 417, 432–33 (Del. Ch. 2007); *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 218 n.155 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007). And one court has expressly held there is no conflict between Texas and Delaware law with regard to direct-benefits estoppel. *Harland Clarke Holdings Corp. v. Milken*, 997 F. Supp. 2d 561, 581 (W.D. Tex. 2014). Because Texas and Delaware law are in harmony, we need not decide whether Delaware law should control.

The parties also dispute whether the Dealer Agreements were valid contracts, given that they were not signed by any party. We need not decide that question in order to resolve this appeal. Rather, we will assume for the sake of argument that the Dealer Agreements were valid and binding upon Telsmith, McCourt, and the Ohio equipment dealer.

Generally, parties must sign arbitration agreements before being bound by them. *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding). "Arbitration agreements apply to nonsignatories only in rare circumstances . . . ." *Id.* (cleaned up) (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 358 (5th Cir. 2003)). We apply Texas procedural rules and substantive law in determining whether nonsignatories are bound by an arbitration agreement. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). Whether an arbitration agreement binds a nonsignatory is a gateway matter to be determined by the court rather than the arbitrator. *Id.* The party seeking arbitration bears the burden of establishing that the arbitration agreement binds a nonsignatory. *Cardon Healthcare Network, Inc. v. Goldberg*, No. 03-17-00474-CV, 2018 WL 1124500, at *2 (Tex. App.—Austin Mar. 2, 2018, no pet.) (mem. op.); *Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 81 (Tex. App.—Texarkana 2014, no pet.) (op. on reh'g); *see Villa De Leon Condos., L.L.C. v. Stewart*, No. 02-14-00271-CV, 2015 WL 729462, at *5 (Tex. App.—Fort Worth Feb. 19, 2015, no pet.) (mem. op.) (Gabriel, J., concurring).

Texas recognizes multiple theories that may bind a nonsignatory to an arbitration agreement, one of which is direct-benefits estoppel. *G.T. Leach Builders, L.L.C. v. Sapphire V.P., L.P.*, 458 S.W.3d 502, 524 (Tex. 2015); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding). Direct-benefits estoppel can bind a nonsignatory in two ways. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132–33 (Tex. 2005) (orig. proceeding). First, a nonsignatory will be bound to

6

arbitrate if it sues based on a contract that includes an arbitration provision. *Id.* at 131. A plaintiff may not seek to hold a nonsignatory liable based on the terms of an agreement that contains an arbitration provision while simultaneously asserting the provision lacks force because the defendant is a nonsignatory. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 637 (Tex. 2018). When a nonparty's claim depends on the contract's existence and cannot stand independently—that is, the alleged liability arises solely from the contract or must be determined by reference to it— equity prevents the nonparty from avoiding the arbitration clause that was part of that agreement. *Id.* But when the substance of the claim arises from general obligations imposed by state law, including statutes, torts, and other common law duties, direct-benefits estoppel is not implicated even if the claim refers to or relates to the contract or would not have arisen but for the contract's existence. *Id.*

Regarding this first form of direct-benefits estoppel, Telsmith asserts that 37BP's claim for breach of express warranty was based on the terms of the manufacturer's warranties containing the arbitration clauses. Telsmith observes that each Dealer Agreement provided a manufacturer's warranty and then disclaimed any other express or implied warranties. Telsmith argues that because any other warranties were disclaimed, then by process of elimination, 37BP's claim for breach of express warranty must necessarily rest on the only remaining warranties: the manufacturer's warranties.

7

"[W]hether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim . . . ." *Weekley Homes*, 180 S.W.3d at 131–32. The substance of 37BP's claim shows that it is not based on the manufacturer's warranties. Within its claim for breach of express warranty, 37BP complained about a series of specific misrepresentations concerning the qualities and capabilities of the crushers; according to 37BP, McCourt and Telsmith falsely warranted that the equipment (1) would produce, on average, 600 tons of material per hour; (2) would receive up to forty-inch stones; (3) would not overload with rock; and (4) would be equipped with a Tier III engine, among other alleged misrepresentations. None of these qualities or capabilities are mentioned in the Dealer Agreements, let alone their manufacturer's warranties. Rather, 37BP argues that these representations were made verbally during the sales process that led to 37BP's purchase of the crushers. Thus, the substance of the claim does not rely on any representations or warranties that are contained in the manufacturer's warranties.

Any disclaimers would not change that state of affairs. Disclaimer of warranty is an affirmative defense. *MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 136 (Tex. 2014). As such, disclaimer is something that the defendant must plead and prove. *See Bedford Internet Office Space, L.L.C. v. Tex. Ins. Grp., Inc.*, 537 S.W.3d 717, 720 (Tex. App.—Fort Worth 2017, pet. dism'd). If a defendant proves this defense, then the defendant will not have disproved the factual content of the plaintiff's case; rather, the defendant will have established some independent reason why the plaintiff should

8

not recover. *See Zorrilla v. Aypco Constr. II, L.L.C.*, 469 S.W.3d 143, 155–56 (Tex. 2015); *MAN Engines*, 434 S.W.3d at 136. Thus, this defense does not alter the substance of 37BP's express warranty claim, *see Bedford Internet*, 537 S.W.3d at 720, and that substance is the barometer by which we gauge whether the claim is based on the contract. *See Weekley Homes*, 180 S.W.3d at 131–32. Because the substance of 37BP's express warranty claim does not rely on the manufacturer's warranties—regardless of any disclaimers—this form of direct-benefits estoppel does not apply.

This brings us to the second form of direct-benefits estoppel: a nonsignatory will be bound to arbitrate if it "deliberately seeks and obtains substantial benefits from the contract itself." *Id.* at 132. "[F]or example, a firm that uses a trade name pursuant to an agreement containing an arbitration clause cannot later avoid arbitration by claiming to have been a nonparty." *Id.* at 133 (citing *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993)). "Nor can nonsignatories who received lower insurance rates and the ability to sail under the French flag due to a contract avoid the arbitration clause in that contract." *Id.* (citing *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999)). "[W]hen a nonparty consistently and knowingly insists that others treat it as a party, it cannot later turn its back on the portions of the contract, such as an arbitration clause, that it finds distasteful. A nonparty cannot both have his contract and defeat it too." *Id.* at 135 (cleaned up). As federal courts have termed it, the nonsignatory's conduct must "embrace[] the contract," *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514,

517 (5th Cir. 2006), and not merely "shake[] hands with it." *See Weekley Homes*, 180 S.W.3d at 134–35.

This form of direct-benefits estoppel only "applies when a nonsignatory *knowingly* exploits the agreement containing the arbitration clause." *Id.* at 135 n.47 (cleaned up) (quoting *Bridas*, 345 F.3d at 361–62). The knowledge element is best developed in federal law. In the case that coined the direct-benefits estoppel doctrine, the court rested its holding in equal parts on (1) the knowing receipt of and failure to object to a contract that purported to bind the nonsignatory and (2) the receipt of benefits under the contract. *Deloitte Noraudit*, 9 F.3d at 1064. The Fifth Circuit has made the matter more explicit: "To satisfy the knowledge requirement, the case law requires that the non-signatory have had actual knowledge of the contract containing the arbitration clause." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010). Thus, the *Noble* court held that the nonsignatory was not bound because "no evidence supports a conclusion that [the nonsignatory] *knew of the terms* of the" agreements that contained the arbitration clauses. *Id.* at 474 (emphasis added). Based on the Fifth Circuit's reasoning, Judge Hittner has expressly held that in order to bind a nonsignatory, there must be a demonstration that the nonsignatory "had actual knowledge of the terms of the arbitration agreement." *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 921 F. Supp. 2d 685, 694 (S.D. Tex. 2013).

Even before *Noble* and *Petrobras*, a federal district court applied similar reasoning to facts that resemble those before us. *See Delaney v. Gulf Stream Coach, Inc.*,

10

No. CIV.A. H-08-2018, 2008 WL 5114955, at *3 (S.D. Tex. Dec. 3, 2008). There, the plaintiffs sought warranty repairs on a motor home, and the defendant moved to dismiss based on a forum-selection clause[2] contained in the warranty document. *Id.* at *1. The plaintiffs submitted evidence that they had not signed the warranty document and that they had not received the document until after they attempted to have the home repaired. *Id.* The court held that because the evidence showed that the plaintiffs did not "have knowledge of the Limited Warranty *Document*" itself when they first sought to have the motor home repaired, the plaintiffs did not knowingly exploit that document and could not be held to it via a theory of direct-benefits estoppel. *Id.* at *3 (emphasis added). Given the Texas Supreme Court's repeated reference to and reliance upon federal law when discussing direct-benefits estoppel, we find this guidance particularly persuasive.[3]

Indeed, Texas courts have applied a similar test when determining whether employees may be bound to their employers' arbitration agreements under *In re*

---

[2] *See St. Clair v. Brooke Franchise Corp.*, No. 2-06-216-CV, 2007 WL 1095554, at *4 (Tex. App.—Fort Worth Apr. 12, 2007, no pet.) (mem. op.) (agreeing that arbitration cases on direct-benefits estoppel were relevant to forum-selection clause cases on the same subject "because an arbitration agreement is a type of forum selection clause"); *see also Hellenic Inv. Fund*, 464 F.3d at 517–18 (similar).

[3] *See, e.g.*, *Weekley Homes*, 180 S.W.3d at 130–35 (citing federal authority upwards of forty-five times). The doctrine of direct-benefits estoppel is imported from federal law, where it was first developed. *Rachal*, 403 S.W.3d at 846. Since its adoption, the Texas Supreme Court has "endeavor[ed] to keep" Texas law on this subject "as consistent as possible with federal law." *Weekley Homes*, 180 S.W.3d at 131; *see Labatt Food Serv.*, 279 S.W.3d at 643.

*Halliburton Co.*, 80 S.W.3d 566, 568–69 (Tex. 2002) (orig. proceeding). Under *Halliburton*, "[a]n employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it." *In re Dall. Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006) (per curiam) (orig. proceeding). "In order to establish notice, an employer 'must prove that he unequivocally notified the employee of definite changes in employment *terms.*'" *Murdock v. Trisun Healthcare, L.L.C.*, No. 03-10-00711-CV, 2013 WL 1955767, at *3 (Tex. App.—Austin May 9, 2013, pet. denied) (mem. op.) (emphasis added) (quoting *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 299 (Tex. 1986)). "An employee has notice of an arbitration agreement if she has knowledge of both the *terms* of the policy and the certainty of their imposition." *Id.* (emphasis added) (citing *Hathaway*, 711 S.W.2d at 299). This test usually requires that the employee receive access to a copy of the arbitration agreement or at least a summary of its essential terms.[4] The knowledge element of direct-benefits estoppel would likely be satisfied by similar indicia of knowledge.

In this case, there is evidence that 37BP was told that the machines were protected by some sort of warranties for a year. However, the record contains no evidence tending to show that 37BP was made aware of the actual warranty

---

[4]*Murdock*, 2013 WL 1955767, at *4 (citing *Weekley Homes, L.P. v. Rao*, 336 S.W.3d 413, 418 (Tex. App.—Dallas 2011, pet. denied)); *see, e.g.*, *Dall. Peterbilt*, 196 S.W.3d at 162–63 (holding six-page summary of the arbitration agreement's terms sufficed to establish notice); *Halliburton*, 80 S.W.3d at 568–69 (same, one-page summary).

documents themselves or their terms, let alone the Dealer Agreements in which they were housed. There is no evidence that 37BP was given copies of the warranty documents or even apprised of their existence. Nor is there evidence that the terms of these documents were conveyed to 37BP. And even assuming that the separate warranties contained in the customer manuals might have imparted 37BP with awareness of the need to arbitrate,[5] there is no evidence that Telsmith gave those manuals to 37BP. "[T]he equitable nature of [direct-benefits estoppel] may render firm standards inappropriate, requiring trial courts to exercise some discretion based on the facts of each case." *Weekley Homes*, 180 S.W.3d at 135. At its discretion, the trial court could have rationally concluded that in fairness and equity, 37BP could not be bound to a document it never saw or signed. A nonparty cannot be said to "have [its] contract and defeat it too" if the nonparty doesn't actually "have" the contract's terms within its perceptual reach. *See id.* Because Telsmith failed to carry its burden to prove knowledge, this form of direct-benefits estoppel does not apply. *See Glassell Producing*, 422 S.W.3d at 81.

The trial court concluded that this case did not present one of the "rare circumstances" when a nonsignatory should nonetheless be held to a contract. *See*

---

[5]*But see Hawk Steel Indus., Inc. v. Stafford*, No. 02-19-00040-CV, 2019 WL 3819506, at *3–5 (Tex. App.—Fort Worth Aug. 15, 2019, pet. denied) (mem. op.) (holding that awareness of one document with inapplicable arbitration provisions did not suffice to notify the nonparty of a separate document containing applicable arbitration provisions).

13

*Rubiola*, 334 S.W.3d at 224.  Having determined that neither form of direct-benefits estoppel applies, we cannot disagree.  We overrule Telsmith's sole issue.

### III.   CONCLUSION

We affirm the trial court's order denying the motion to compel arbitration.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered:  February 13, 2020

14