BORDERS ELECTRONICS CO., INC., Harriet Greenfield, Mary Tendrich and Arthur Ross, individually, and on behalf of themselves and all other stockholders of General Linear Corp., Plaintiffs,

v.

WHIRLPOOL CORPORATION, General Linear Corporation, C. M. Brimer, individually and as Co-Executor of the Estate of J. W. von Brimer, Deceased, John Quirk, individually and as Co-Executor of the Estate of J. W. von Brimer, Deceased, and John G. Spann, Defendants.

No. 82 Civ. 0294.

United States District Court,
S. D. New York.

Feb. 1, 1982.

Jacobson & Bailin, New York City, for plaintiffs; Marc Jacobson, Bruce Levinson, New York City, of counsel.

Carro, Spanbock, Londin, Fass & Geller, New York City, for defendants General Linear Corp. and John Quirk; Michael L. Hirschfeld, Mark H. Budoff, New York City, of counsel.

## OPINION

WEINFELD, District Judge.

In this action plaintiffs seek to recover on their own behalf and on behalf of all other stockholders of General Linear Corp. ("GLC") similarly situated, at least $1,400,000 and punitive damages upon allegations that the defendant John Quirk ("Quirk") together with J. W. von Brimer, now deceased ("von Brimer"), whose executor is also named as a defendant, engaged in various fraudulent acts of commission and omission and breach of fiduciary duties owing to GLC. The central core of the twelve causes of action alleged in the complaint is an assignment of two patents by Quirk and von Brimer to GLC in July 1970 and agreements executed relative thereto.

Prior to the assignment, the patents had been at the center of litigation in the United States District Court for the Northern District of California commenced in May 1969 against the Whirlpool Corporation, named as a defendant herein. In that action, von Brimer, the inventor of the patents, charged Whirlpool with malicious prosecution of a patent interference proceeding instituted against him. He alleged three separate claims: (1) fraudulent appropriation; (2) malicious prosecution; and (3) intentional interference. The District Court dismissed the action for lack of standing; however, the Court of Appeals affirmed the dismissal as to only two counts but reversed with respect to the second count—malicious prosecution of the interference proceeding and that claim was remanded for trial.[1] Upon the trial, the jury returned a verdict in favor of von Brimer and against Whirlpool but this was set aside and a new trial ordered. During the progress of the second trial which occurred nine years after the action was commenced, it was settled for $1,400,000 payable by Whirlpool in annual installments commencing December 31, 1978 and terminating January 15, 1984. All installments up to and including one of $80,000 due on January 15, 1982 have been paid; in addition, there remain only two other installments each of $80,000 payable respectively on January 15, 1983 and January 15, 1984. A Nevada state court where the von Brimer estate was under administration approved the compromise.[2]

However variously stated in the twelve assorted causes of action alleged against one or more of the defendants, the essence of the claim is that the assignment of the patents by von Brimer and Quirk to GLC carried with it all rights asserted in the action against Whirlpool. This is disputed by the defendants who claim that only the

---

1. *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838 (9th Cir. 1976).

2. Plaintiffs charged fraud was committed upon the Nevada court by a number of defendants and one of their causes of action is based thereon.

rights to the patents, qua patents, were assigned to GLC and that the malicious prosecution claim was a personal right for injuries sustained by von Brimer in defending the patents in the interference proceeding that Whirlpool had commenced.[3]

The matter is now before the Court on plaintiffs' motion pursuant to N.Y. C.P.L.R. section 2701 to require that the $80,000 installment paid on January 15, 1982 apparently now in the possession of the attorney for the von Brimer estate, who practices in San Francisco, California, be paid into this Court pending the final determination of this action. Upon plaintiffs' ex parte application, the judge presiding in the emergency part granted a temporary restraining order enjoining all defendants from making any disposition of that sum pending the final determination of this motion. The defendants, of course, oppose the motion and cross-move to vacate the temporary restraining order.

Section 2701 authorizes a court to order money paid in the court during the pendency of the action where "a party has such property in his possession, custody or control as trustee for another party or where it belongs or is due to the other party." Plaintiffs contend that the $80,000 installment paid on January 15, 1982 is, and that the two subsequent $80,000 installments due in 1983 and 1984 will be, held by one or more defendants "as trustee" for GLC *and* that these sums belong or are due to them. This, of course, assumes the accuracy of the very facts at issue. Plaintiff's contentions are exactly what this case is about. Defendants deny that the monies are held by them as trustee or are due to the plaintiffs. They contend that the assignments did not interfere with the right to the malicious prosecution action against Whirlpool or the

monies received in settlement; that these were personal claims and did not implicate any proprietary interest in the patents.

Plaintiffs have known of the settlement of the Whirlpool action from at or about the time it was formalized in March 1979. This is the plaintiffs' third attempt to share in or obtain part or all of the proceeds of the settlement. In August 1979 an action was commenced in the Nevada state courts wherein plaintiffs claimed a 40% share of the settlement proceeds and sought the appointment of a receiver; in this action, they claim on behalf of GLC entitlement to all the proceeds. Upon plaintiffs' failure to post a security undertaking as ordered by the court, the action was dismissed with prejudice on January 30, 1980 and affirmed upon appeal on April 10, 1981.[4]

In June 1980, Whirlpool filed an interpleader action in the same court wherein it named the plaintiffs in this action and the von Brimer estate and Quirk as defendants. The interpleader action related to the outstanding installments Whirlpool was required to pay including the January 15, 1982 installment—the subject of this motion. Upon plaintiffs' default, Whirlpool moved for voluntary dismissal and the interpleader case was dismissed on or about August 25, 1980.[5] Plaintiffs, fully aware of their claims and the defendants' contention negating them, took no action for more than a year and a half when, in January 1982, they filed the instant suit. Further, defendants raise a substantial issue that under the New York statute of limitations, a number of counts charging fraud, are barred noting that the alleged fraudulent conduct occurred in 1970.

Finally, the Court considers the ruling in the Ninth Circuit. In reversing the lower

---

**3.** Quirk had acquired an interest in the patents under an agreement with von Brimer.

**4.** *Borders Electronics Co. v. Quirk,* 626 P.2d 266 (Nev.1981). One cause of action in this suit is alleged against the attorney who represented plaintiffs in the Nevada action, charging him with malicious malpractice upon allegations that he failed to inform the plaintiffs that they were required to post a security bond.

Upon argument of this motion when the defendants alleged that the dismissal had been affirmed on appeal, the plaintiffs responded that the appeal was taken without their knowledge or authority.

**5.** Again plaintiffs allege that the default was occasioned by the neglect of their retained attorney and charge him with malpractice with respect to this action.

court's dismissal of the malicious prosecution claim, that court distinguished it from von Brimer's claims of fraudulent appropriation and intentional interference with contractual relations, as to which the dismissal was affirmed, stating:

> We therefore hold that, given his lack of a proprietary interest in the patented item, appellants' allegations of intentional interference with contractual relations and prospective economic advantage fail to state a claim upon which relief can be granted.

> *We hold, however, that this lack of a proprietary interest would nor* [sic] *bar Von Brimer from asserting his claim for malicious prosecution.* In California, actions for malicious prosecutions are "personal actions which do not give rise to a cause of action in any one other than the person directly aggrieved" [citations omitted].[6]

Thus, without deciding any factual issue, it appears that there is substance to the defendants' position that the action against Whirlpool involved personal claims asserted by von Brimer and did not derive from the patents themselves. Plaintiffs, upon the papers here presented, have not clearly established that the defendants hold the $80,000 payment made by Whirlpool on January 15, 1982 as either a trustee for the plaintiffs or that the money is due to the plaintiffs. That is the issue to be decided; it is the subject of this litigation.

Plaintiffs' further claim that Quirk is a trustee of GLC because the corporation was dissolved in March 1979 and under Nevada law, as a director, he thereby became a trustee of the corporation, does not aid the plaintiffs. He became a trustee of property and assets to which the corporation was entitled. Here it is disputed that the corporation is entitled to the $80,000.

Under all the circumstances, application of section 2701 of the New York statute is not warranted. Plaintiffs, other than their allegations, have not established that the defendants are trustees of their property or hold property belonging to them. To apply the section would, in effect, be giving the plaintiffs in advance of judgment the benefit of an attachment that, under New York law, would require plaintiffs to establish a valid claim over and above all counterclaims and the posting of security for the payment of legal fees and costs in the event the attachment were vacated. The facts here presented do not warrant such extraordinary relief.

Moreover, in the light of plaintiffs' knowledge for more than a year and a half of the facts upon which they predicate the instant action and during which they took no action following the dismissal of the two Nevada actions, the doctrine of laches also warrants denial of the motion. Finally, plaintiffs have made no showing that equitable consideration such as likelihood of disposition of the funds to defeat plaintiffs' alleged right thereto if they prevail or that any judgment that may be obtained will be worthless unless the monies are deposited in the Court. The unsupported statement that any judgment may be obtained "will probably be rendered worthless"[7] is clearly insufficient to grant equitable relief in the Court's discretion as plaintiffs request. The plaintiffs' motion for an order pursuant to section 2701 is denied; the temporary restraining order previously granted is vacated.

So ordered.

---

**6.** *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 846–47 (9th Cir. 1976) (emphasis supplied).

**7.** Brief for Plaintiffs at 9.