GENERAL MOTORS CORPORATION
& Adam Opel GmbH, Plaintiffs,

v.

FIAT S.p.A, Fiat Auto Holding
B.V., and Fiat Auto S.p.A.,
Defendants.

No. 08 Civ. 4999(DAB).

United States District Court,
S.D. New York.

July 22, 2009.

Roger B. Mead, Folger Levin & Kahn LLC, San Francisco, CA, for Plaintiffs.

John Louis Hardiman, Sullivan & Cromwell, LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

DEBORAH A. BATTS, District Judge.

Plaintiff General Motors and its subsidiary bring suit against Defendant Fiat S.p.A and its subsidiaries, seeking declaratory and injunctive relief requiring Defendants to comply with the dispute resolution provisions of the parties' Master Separa-

tion Agreement with regard to their contract dispute. Defendants move to stay, or in the alternative, dismiss the suit on the basis that it concerns an issue that is referable to arbitration under the separate arbitration provisions of the European Powertrain Cross Supply Agreement, itself an ancillary agreement to the Master Separation Agreement. Plaintiffs cross-move for summary judgment.

## I. BACKGROUND

Plaintiff General Motors Corporation ("General Motors") is a corporation organized under the laws of Delaware with its principal place of business in Michigan. (Compl. ¶ 8.) Plaintiff Adam Opel GmbH ("Adam Opel") is a corporation organized under the laws of Germany. (Compl. ¶ 9.) Defendants Fiat S.p.A ("Fiat") and Fiat Auto S.p.A ("Fiat Auto") are corporations organized under the laws of Italy. (Compl. ¶¶ 10, 12.) Defendant Fiat Auto Holding B.V. ("Fiat Auto Holding") is a corporations organized under the laws of the Netherlands. (Compl. ¶ 11.)

Pursuant to a March 13, 2000 Master Agreement (the "2000 Agreement"), General Motors and Fiat agreed to enter into a number of cooperative agreements to combine portions of their operations in Europe and South America ("the Joint Ventures"). (Compl. ¶ 16.) In furtherance of the Joint Ventures, General Motors, Fiat, and their subsidiaries entered into various Project Agreements. (Compl. ¶ 17.) Subsequently, following a series of disagreements. General Motors and Fiat entered into a Termination Agreement, dated February 13, 2005, in order to oversee the liquidation of the Joint Ventures.

(Compl. ¶ 19.) On May 13, 2005, General Motors and Fiat entered into the Master Separation Agreement to further outline the process of terminating the Joint Ventures. (Compl. ¶ 20.) That same day, as specified in the Master Separation Agreement, the parties then entered into numerous ancillary agreements, including the European Powertrain Cross Supply Agreement (the "ECSA"). (Compl. ¶ 21.)

### A. *The Master Separation Agreement*

Section 3.1 of the Master Separation Agreement, (Hardiman Aff., Ex. A), relates to the "Unwind[ing] of [the] Powertrain Joint Venture" and "Certain Specific Agreements between Fiat Auto and GM and Certain Actions Undertaken by the Parties." In particular, Section 3.1(a)(iv) provides for the "resol[ution] [of] certain special items relating the Powertrain JV[,]" including "[s]pecific investments [to] be amortized in the piece price over five years as provided in Schedule 3.1(v). Pursuant to Section 3.1(a)(iv). Exhibit 3.1(iv) [1] provides for the further allocation of both specific and common investment between the parties.

Section 9.3 of the Master Separation Agreement states that "[a]ll rights and remedies of the Parties hereunder shall be in addition to all other legal rights and remedies belonging to them and the same shall be deemed to be cumulative and not alternative to such legal rights and remedies . . ." Section 9.10 of the Master Separation Agreement further provides that the "validity, interpretation and implementation of this Agreement shall be governed by and construed in accordance with the

---

1. Although Section 3.1(a)(iv) of the Master Separation Agreement refers to a "Schedule 3.1(v)," the Court agrees with Plaintiffs that Section 3.1(a)(iv) was intended to refer to Exhibit 3.1(iv), given that the exhibit had previously read "Exhibit 3.1(v)" and was corrected by hand to read "Exhibit 3.1(a)(iv)" so as to correspond to Section 3.1(a)(iv). (Pls.' Mem. Of Law, 19 & n. 6); (Defs.' Rep. Mem. Of Law, 14) (not contesting Plaintiffs' assertion that this discrepancy was the result of a typographical error).

Laws of New York, excluding any conflict of law provisions which would require application of another law."

Further, Section 9.11 provides that "the dispute resolution process is as provided in Article 16 of the Termination Agreement which is incorporated herein by reference." In the event that informal dispute resolution proceedings between the parties are unsuccessful, Sections 16.2 through 16.4 of the Termination Agreement provide for a Binding Dispute Resolution Process, including presentations before a Mediator and optional Qualified Expert, chosen by the parties and/or Mediator. However, Section 16.5 of the Termination Agreement states that the dispute resolution provisions do not preclude the parties from "applying to the United States District Court for the Southern District of New York for preliminary or injunctive remedies to enforce this Section 16, to preserve the status quo during the pendency of the Dispute resolution proceedings under this Section 16 or to enforce the decision of the Mediator." Further, in Section 20.9(a) of the Termination Agreement, which remains effective under Section 9.4 of the Master Separation Agreement, General Motors and Fiat agreed that, subject to the dispute resolution proceedings of Section 16, "each of Fiat and General Motors hereby irrevocably submits to the exclusive jurisdiction of the United States District Court for the Southern District of New York ... for the purpose of any action or proceeding arising out of or relating to this Agreement[.]"

## B. *The Cross Supply Agreement*

Paragraph 14.2 of the ECSA, (Hardiman Aff., Ex. C), provides that either party may cease purchasing one of the Cross Supply Products from the other upon one year's written notice, but must pay:

within 30 days from the expiration of the one year written notice period the net book value that has not been recovered in the piece price of the specific investments and capitalized FGP start-up and pre-production expenses that have been allocated to Customer on Cross Supply Products and Spare Parts as shown in Section 7 and Schedule 3.3B and 3.3C (based in part on Exhibit 3.1(v) and Schedule 3.1(a)(iv)) of the [Master Separation Agreement], but not yet fully paid for as part of the piece price.

Paragraph 24 of the ECSA provides that it and its schedules and exhibits constitute "the entire agreement among the Parties/ Suppliers and Customers with respect to the matters covered herein and ... supersede all prior agreements, covenants, arrangements, communications, representations and warranties, whether oral or written, by an officer, employee or representative of any of the Parties, Suppliers or Customers."

Paragraphs 29 and 30 of the ECSA set forth an informal process for the resolution of disputes as well as an arbitration process administered by and under the rules of the International Chamber of Commerce (the "ICC"). Thereunder, arbitration may be demanded by either party "[i]f the matter is not resolved within 30 days of the Request for Informal Dispute Resolution."

Schedules 3.3B and 3.3C to the ECSA set forth summaries of the "Specific Investment Depreciation" and "Amortization" of the different Cross Supply Products, respectively.

## C. *The Dispute*

On December 22, 2006, Fiat sent General Motors a letter providing notice that it was discontinuing purchases of Family 1 of the Cross Supply Products pursuant to Paragraph 14.2 of the ECSA, effective December 31, 2007. (Hardiman Aff., Ex. D); (Defs.' 56.1 Stmt., ¶ 20.)

After a dispute arose related to Fiat's obligation to pay common investment expenses associated with the Family 1 products (the "Family 1 Dispute"), and the parties' business representatives were unable to resolve the dispute, on January 31, 2008, General Motors sent to Fiat an Invoice, seeking payment in the amount of $21,556,500.00 for both specific and common investment expenses, as well as certain start-up expenses. (Hardiman Aff., Ex. D); (Defs.' 56.1 Stmt., ¶ 22.) Fiat has since paid all but the common investment expenses. (Defs.' 56.1 Stmt., ¶ 23.)

On April 18, 2008 General Motors requested informal dispute resolution of the Family 1 Dispute under Section 9.11 of the Master Separation Agreement, to which Fiat responded on April 24, 2008 by stating that the Master Separation Agreement's dispute resolution provisions were inapplicable to the dispute. (Defs.' 56.1 Stmt., ¶¶ 24–25.) Informal discussions were held between counsel for the parties and on May 30, 2008 General Motors sent Fiat a request for Binding Dispute Resolution under Section 9.11. (Defs.' 56.1 Stmt., ¶ 26.) That same day. General Motors filed the instant Complaint, seeking declaratory and injunctive relief requiring Fiat to abide by the dispute resolution provisions of the Termination Agreement, as incorporated by the Master Separation Agreement. On July 23, 2008 Fiat moved to Stay, or in the alternative, to Dismiss the Complaint on the basis of the arbitration provisions of the ECSA, which it contends govern the Family 1 Dispute. Subsequently, on August 22, 2008, Plaintiffs moved for Summary Judgment on their claim for declaratory and injunctive relief.

## II. DISCUSSION

### A. Standard of Law

█ "The summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability regardless of how the party that favors arbitration styles its motion." *Brown v. St. Paul Travelers Companies,* 559 F.Supp.2d 288, 290–91 (W.D.N.Y.2008) (quoting *Bensadoun v. Jobe–Riat,* 316 F.3d 171, 175 (2d Cir.2003)) (internal quotations omitted). Accordingly, the same standard applies to both parties' motions and the Court will consider them in sequence.

A district court should grant summary judgment when there is "no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,* 219 F.3d 104, 107 (2d Cir.2000). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *James v. New York Racing Ass'n,* 233 F.3d 149, 152 (2d Cir.2000). While a court must always "resolve ambiguities and draw reasonable inferences against the moving party," *Abramson v. Pataki,* 278 F.3d 93, 101 (2d Cir.2002), "mere speculation and conjecture is insufficient to preclude the granting of the motion." *Guilbert v. Gardner,* 480 F.3d 140, 145 (2d Cir.2007). Instead, when the moving party has documented particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" *Zelnik v. Fashion Institute of Technology,* 464 F.3d 217, 224 (2d Cir. 2006) (quoting Fed.R.Civ.P. 56(e)). Establishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived " 'to put up or shut up.' " *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (citation omitted). Unsupported allegations in the pleadings thus cannot create a material issue of fact. *Id.*

### B. The Court Determines the Issue of Arbitrability

■ Defendants first contend that the question of whether the Family 1 Dispute is arbitrable is itself a question that should be left to the ICC under the arbitration provision of the ECSA. (Defs.' Mem of Law, 11–13.)[2] However, Plaintiffs correctly point out that both sides agree that the matter is arbitrable, and that they merely disagree as to which agreement's provision controls. (Pls.' Mem of Law, 10–12.) Defendants nevertheless contend that the ICC should decide the question of which arbitration provision controls, because the ECSA's broad arbitration provision provides "clear and unmistakable evidence" that the parties intended the question of arbitrability to be decided by the ICC arbitrator. (Defs.' Mem. of Law, 12–13.) However, Defendants concede that "the dispute resolution clause in the Separation Agreement is also broad", (Defs.' Rep. Mem of Law, 7–8.) In light of the existence of the two broad arbitration provisions, the Court finds that there is no "clear and unmistakable evidence," Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir.2005), that the parties intended the question of arbitrability to itself be determined by the ICC.

### C. Defendants' Motion to Stay, or in the Alternative, to Dismiss

■ Defendants rely on Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, to contend that "because the operative facts, as pleaded by GM, clearly demonstrate that the dispute arises out of the ECSA,"

the Family 1 Dispute should therefore be resolved under the arbitration provision of the ECSA. (Defs.' Mem of Law, 18.) Section 3 provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, *upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement,* shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . .

(emphasis added.) Here, Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201, finding that the Family 1 Dispute falls within the dispute resolution provision of the Master Separation Agreement. (Comp. ¶ 31.) Consequently, in order for Defendants to stay or dismiss this proceeding they must show that there is no genuine issue of material fact as to whether the 'issue' raised by Plaintiffs' suit—namely, whether or not the Family 1 Dispute falls within the dispute resolution provision of the Master Separation Agreement itself—is referable to arbitration under the ECSA. The ECSA in turn makes disputes arbitrable if they "aris[e] out of or in connection with [the ECSA]." (ECSA § 30.2).

Consequently, even if Defendants were correct that the Family 1 Dispute arises under the ECSA, they are wrong that Section 3 permits them to stay or dismiss this action on that basis alone. The 'issue'

---

**2.** Despite Defendants arguments to the contrary, (Defs.' Mem. Of Law, 20–21), the Court finds that it has personal jurisdiction over Defendants. Section 16 of the Termination Agreement, which is expressly incorporated by Section 9.4 of the Master Separation Agreement, states that "each of Fiat and General Motors hereby *irrevocably* submits to the exclusive jurisdiction of the United States District Court for the Southern District of New York ... for the purpose of any action or proceeding arising out of or relating to this Agreement[.]" (emphasis added).

before the Court is not the merits of the Family 1 Dispute, but rather the determination of whether the merits are arbitrable under the provisions of the Master Separation Agreement. In order for Defendants to prevail on their motion, therefore, it is that preliminary question of arbitrability, and not the question of the merits, that must itself arise out of or in connection with the ECSA.[3]

The language of the ECSA arbitration provision, however, is at most ambiguous in this regard. It would be strange indeed to say that the question of the arbitrability of the Family 1 Dispute under the Master Separation Agreement arises out of or in connection with the ECSA, which itself is one of multiple ancillary agreements to the Master Separation Agreement. Rather, the issue of the arbitrability of the Family 1 Dispute under the Master Separation Agreement arises, obviously, out of or in connection with the Master Separation Agreement, not the ECSA. Under Section 3 of the Federal Arbitration Act, the Court finds that the instant question as to the arbitrability of the Family 1 Dispute under the Master Separation Agreement does not unambiguously fall within the scope of the ECSA's arbitration provision. Accordingly, Defendants' Motion to Stay or Dismiss the action is DENIED.

D. *Plaintiffs' Motion for Summary Judgment*

1. *Whether the Dispute Falls within the Scope of the Master Separation Agreement*

 Before compelling arbitration, a "district court must first determine two threshold issues that are governed by state rather than federal law: (1) Did the parties enter into a contractually valid arbitration agreement and (2) if so, does the parties' dispute fall within the scope of the arbitration agreement?" *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir.2003).

As to the first requirement. Defendants do not contest that the parties entered into a valid dispute resolution agreement under Section 9.11 of the Master Separation Agreement. (Defs.' 56.1 Stmt., ¶¶ 10, 15.)

As to whether the Family 1 Dispute falls within the scope of that dispute resolution agreement, the threshold question in a conflict over the meaning of a contract is whether the contract terms are ambiguous. Plaintiffs allege that the dispute at issue "falls squarely within the plain language of [the Master Separation Agreement's] attached Exhibit 3.1(a)(iv)," (Pls.' Mem. Of Law, 17), which states that if the ECSA is terminated as to any product family, including the Family 1 product engines, "the remaining net book value of the associated *common investment* ... are guaranteed to be paid in full." (Ex. 3.1(a)(iv)) (emphasis added).

Here, the Court finds that the language of Exhibit 3.1(a)(iv) to the Master Separation Agreement unambiguously provides for the reimbursement of the net book value of common investment in the event that the ECSA is terminated as to any product family. Plaintiffs affirm that the January 31, 2008 invoice sought payment on common investment and other expenses associated with the termination of the ECSA as to the Family 1 engines, and that Defendants subsequently paid all expenses with the exception of the common investment expenses. (Millikin Decl. ¶¶ 10, 12); (Pls.' 56.1 Stmt., ¶¶ 21–23). Furthermore, Defendants' concede that the dispute involves the payment of common investment expenses. (Defs.' 56.1 Stmt., ¶¶ 21–23).

3. As a result, the Court need not, and does not, express any opinion as to whether the Family 1 Dispute may be said to arise out of the ECSA.

Accordingly, because it falls within the unambiguous language of Exhibit 3.1(a)(iv) to the Master Separation Agreement, the dispute over common investment expenses that derives from the termination of the Family 1 product engine is a dispute "arising out of or in connection with th[e] [Separation Agreement]," Master Separation Agreement, § 20.9(a).

 Faced with the unambiguous language of Exhibit 3.1(a)(iv). Defendants contend that the December 22, 2006 letter and the January 31, 2008 invoice demonstrate that the dispute "arises out of the ECSA, and not the Separation Agreement." (Defs.' Mem. of Law, 16). However, again, the question before the Court is not whether the dispute arises under the ECSA, but whether it falls within the terms of the Master Separation Agreement. In making such a determination, the Court will not look to extrinsic evidence, such as the invoice or letter, unless the terms of the agreement are ambiguous. *JA Apparel Corp. v. Abboud,* 568 F.3d 390, 397 (2d Cir.2009) ("In interpreting an unambiguous contract, the court is to consider its particular words ... but the court is not to consider any extrinsic evidence as to the parties' intentions."). Because the Court has already found that the words of Exhibit 3.1(a)(iv) to the Separation Agreement are unambiguous, it does not consider Defendants contentions with regard to the extrinsic evidence of the letter and invoice.[4]

Accordingly, because there is no remaining genuine issue of material fact as to whether the Family 1 Dispute falls within the unambiguous terms of the Master Separation Agreement, the Court finds that the parties entered into a contractually valid arbitration agreement, and that the

Family 1 Dispute falls within the scope of that agreement. *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel,* 346 F.3d 360, 365 (2d Cir.2003)

### 2. *The Master Separation Agreement is Not Superseded by the Cross Supply Products Agreement*

 Defendants nevertheless contend that the terms of the Master Separation Agreement and its attachments have been superceded by the ECSA's merger clause, which states that the ECSA is the "entire agreement among the Parties, Suppliers and Customers with respect to the matters covered herein and, except as otherwise provided herein, supersedes all prior agreements, covenants, arrangements, [and] communications ... by any officer, employee or representative of any of the Parties, Suppliers or Customers." (Defs.' Rep. Mem. of Law, 15–16) (quoting ECSA, ¶ 24.)

 However, under New York law, the general language of a merger clause like that included in the ESCA is "insufficient to establish any intent of the parties to revoke retroactively their contractual obligations to submit disputes arising" under an earlier agreement to arbitration. *Primex Intern. Corp. v. Wal–Mart Stores, Inc.,* 89 N.Y.2d 594, 599, 657 N.Y.S.2d 385, 679 N.E.2d 624 (N.Y.1997).

In *Primex,* the New York trial and appellate courts had found that a merger clause in a 1995 agreement between the parties, which stated that "[a]ll prior discussions, agreements, understandings or arrangements, whether oral or written, are merged herein and this document represents the entire understanding between the parties[,]" prevented Plaintiff from compelling arbitration under earlier 1990 and 1993 Agreements, which were identical

---

**4.** Although the Court does not consider the invoice and letter, were it to do so, it would still find that the intent of the parties was to

include the current dispute within the scope of the Master Separation Agreement's dispute resolution provision.

in all regards to the 1995 Agreement, except that they included a clause permitting either party to seek arbitration of "any and all disputes arising out of, under or in connection with [the] Agreement ..." *Id.*, 596, 657 N.Y.S.2d 385, 679 N.E.2d 624.

The Court of Appeals reversed the decision of the lower courts, first reasoning that under New York law "a broad arbitration clause survives and remains enforceable for the resolution of disputes arising out of that agreement subsequent to the termination thereof" regardless of whether that termination resulted from the natural expiration of the term of the agreement, unilateral termination under a notice of cancellation provision, or breach by one of the parties. *Id.*, 598–99, 657 N.Y.S.2d 385, 679 N.E.2d 624. Next, it noted that it is widely agreed that the "purpose of a general merger provision ... is to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing." *Id.*, 599, 657 N.Y.S.2d 385, 679 N.E.2d 624 (internal citations omitted.) The Court of Appeals found that because the parties' obligation to arbitrate disputes arising from the earlier agreements in no way implicated the parol evidence rule, that obligation was not precluded by the merger clause. *Id.*, 600, 657 N.Y.S.2d 385, 679 N.E.2d 624.

The Court further noted that under the later, 1995 Agreement "each party still remains free to seek judicial relief for claims against the other arising out of the 1995 Agreement, just as [Defendant] ha[d] done in [a collateral suit], despite enforcement of the arbitration clauses as to disputes under the [earlier] Agreements." *Id.*, 600, 657 N.Y.S.2d 385, 679 N.E.2d 624. Similarly here, both parties remain free to seek arbitration by the ICC for any dis-

putes arising out of the ECSA, despite enforcement of the arbitration clause of the Master Separation Agreement as to disputes arising under it.

Additionally, this interpretation of the effect of a merger clause on a prior arbitration agreement has been extended by the Second Circuit to those clauses, as in the present case, that not only use the "merge" and "entire agreement" terminology, but that also explicitly state that a subsequent agreement "supersedes all prior agreements." *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 283 (2d Cir.2005). The Second Circuit in *Bank Julius Baer & Co.* relied not only on the doctrine of *Primex*, but also on a clause in the contract at issue which provided that "all the rights and remedies provided in this Agreement are cumulative and not exclusive of any rights or remedies provided under any other agreement or by law or in equity." *Bank Julius Baer & Co.*, 424 F.3d at 283. Although the Court believes that the doctrine in *Primex* is sufficient to resolve the issue in favor of Plaintiffs here, it notes that there are additional provisions in the text of the Master Separation Agreement and ECSA, similar to those in *Bank Julius Baer & Co.*, that support Plaintiffs' position.

First, Section 9.3 of the Master Separation Agreement itself contains a 'cumulative remedies' clause like that in *Bank Julius Baer & Co.*, stating that "[a]ll rights and remedies of the Parties hereunder shall be in addition to all other legal rights and remedies belonging to them and the same shall be deemed to be cumulative and not alternative to such legal rights and remedies ... [,]" [5] demonstrating the intent of the parties not to supersede the remedies of the Master Separation Agreement. Additionally, Section 9.4 of the

---

**5.** It is true that in *Bank Julius Baer & Co.* the 'cumulative remedies' clause was located in

the superced*ing* contract, rather than the allegedly superced*ed* contract, as is true in the

**150**

Master Separation Agreement states that "[a]s of the Closing Date, this Agreement and the Ancillary Agreements[,]" of which the ECSA is one, "supercede[ ]" various sections of the Termination Agreement. This again clearly demonstrates that the parties did not intend for the Master Separation Agreement to be superceded in whole by the ECSA, let alone its specific remedies.

Accordingly, in light of the doctrine in *Primex*, as well as the unambiguous text of the Master Separation Agreement demonstrating the parties intent to maintain the dispute resolution procedures provided for in the Master Separation Agreement, the Court finds that there are no remaining genuine issue of material fact and finds that Section 24 of the ESCA does not supercede the arbitration procedures of the Master Separation Agreement.

### III. CONCLUSION

For the reasons stated herein. Defendants' Motion to Stay, or in the Alternative, to Dismiss, is DENIED. Plaintiffs' Motion for Summary Judgment is GRANTED and the Court finds that the Family 1 Dispute is arbitrable under the dispute resolution provisions of the Termination Agreement, as incorporated by the Master Separation Agreement. Within ten days of the date of this Order, Plaintiffs shall provide the Court with a proposed JUDGMENT consistent with this opinion.

SO ORDERED.

instant case. Nevertheless, where, as here, the parties signed both agreements on the same day, in tandem, the language in the Master Separation Agreement clearly evinces the parties' intent to provide for cumulative remedies between the Master Separation Agreement and the ECSA, such that it reinforces the presumption under New York contract law that a general merger clause does not supercede a previous contract's arbitration provisions.