**SYNCORA GUARANTEE INC., Plaintiff,**

v.

**HSBC MÉXICO, S.A., Institución De Banca Múltiple, Grupo Financiero HSBC, División Fiduciaria, Defendant.**

No. 11 Civ. 5353(RMB).

United States District Court, S.D. New York.

March 20, 2012.

Kenneth E. Lee Levine Lee LLP, New York, NY, for Plaintiff.

Francis A. Vasquez, Jr., White & Case LLP, Washington, DC, for Defendant.

### DECISION & ORDER

RICHARD M. BERMAN, District Judge.

## I. Introduction

At the core of this dispute is the question whether and how this case should relate to a parallel arbitration currently pending before the International Chamber of Commerce ("ICC") in New York City and involving substantially similar claims to those presented here. On July 8, 2011, Syncora Guarantee Inc., the plaintiff in this case ("Plaintiff" or "Syncora"), initiated the ICC arbitration ("ICC Arbitration") against Desarrolladora de Concesiones Omega, S.A. de C.V. ("Omega"), a signatory to an insurance and reimbursement agreement, dated December 16, 2005 ("Insurance Agreement"). On August 1, 2011, one month after commencing the ICC Arbitration against Omega, Plaintiff instituted this action in the United States District Court for the Southern District of New York against HSBC Mexico, S.A., Institucion de Banca Multiple, Grupo Financiero HSBC, Division Fiduciaria ("Defendant" or "HSBC"), another signatory to the Insurance Agreement.

## II. Background

### Arbitration

In the ICC Arbitration, Syncora alleges breach of the Insurance Agreement by Omega. (Decl. of Francis A. Vasquez, Jr., dated Sept. 26, 2011 ("Vasquez Decl."), Ex. 1, ¶ 26.) Specifically, Plaintiff contends that breach occurred in or around June 2011 when Omega instructed HSBC "not to make any premium or reimbursement payments to Syncora and to treat the Insurance Agreement[ ] as terminated." (Vasquez Decl., Ex. 1, ¶ 4.) Syncora also asserts its arbitration claims against Omega under a "premium letter," entered into among Omega, HSBC, and Syncora's predecessor, on December 19, 2005 ("Premium Letter"). (Vasquez Deck, Ex. 1, ¶¶ 2, 26.)

On August 18, 2011, Omega filed counterclaims against Syncora in the ICC Arbitration, alleging fraudulent inducement, breach of contract, and breach of implied covenant of good faith and fair dealing. (Am. Ans. & Countercls., dated Sept. 16, 2011, Ex. A, ¶¶ 56–63.) Omega alleges, among other things, that Syncora failed adequately to disclose the risks associated with Syncora's investment in certain collateralized debt obligations ("CDOs") and residential mortgage-backed securities ("RMBS") that caused Syncora to "experience[ ] a near-total collapse in its creditworthiness, with a downgrade far below investment grade and a share price drop of almost 99%." (Am. Ans. & Countercls., Ex. A, ¶¶ 2, 4, 56–58.) Omega alleges that between February 7, 2008 and March 9, 2009, Moody's downgraded Syncora's credit rating from "Aaa" to "Ca," which led S & P to downgrade its credit rating of Omega's bonds—which were insured by Syncora—from "AAA" to "BBB." (Am. Ans. & Countercls., Ex. A, ¶¶ 20, 23, 26.) Omega further alleges that on April 27, 2009, Syncora "suspended payments of all claims on its insurance policies" as a result of an order issued by the New York State Insurance Department ("NYID Order"), and that Syncora thus became "unable to comply with the Insurance Agreement." (Am. Ans. & Countercls., Ex. A, ¶ 28.)[1]

1. The NYID Order directed Syncora to "suspend paying any and all claims and otherwise

Omega alleges that Syncora did not notify Omega or HSBC of the NYID Order, did not respond to Omega's and HSBC's requests for additional financial information, and "continued to demand, and receive, payment of the premiums under the Insurance Agreement[ ]." (Am. Ans. & Countercls., Ex. A, ¶¶ 31, 37.) Omega alleges that on June 6, 2011 Omega's bondholders "elected to terminate" the Insurance Agreement, instructed HSBC to hire another insurer, and instructed HSBC not to pay any further insurance premiums to Syncora because "Syncora's failures thwarted the twin purposes of the Insurance Agreement [ ]—guaranteeing payment on the bonds and supporting the bonds' credit ratings." (Am. Ans. & Countercls., Ex. A, ¶¶ 41, 44; *see* Decl. of Samantha Barquera Betancourt, dated Sept. 26, 2011 ("Betancourt Decl."), Ex. 5, ¶ 5.) By letter dated June 30, 2011, HSBC "communicated the termination of the Insurance Agreement[ ] to Syncora." (Am. Ans. & Countercls., Ex. A, ¶ 45 & n. 55.)

### SONY Litigation

On August 1, 2011, Syncora filed the instant complaint against HSBC, alleging breach of fiduciary duty, breach of contract, breach of duty of good faith, the need for declaratory judgment, indemnification, and promissory estoppel premised upon the very same claims asserted by Syncora against Omega in the ICC Arbitration. (Compl., dated Aug. 1, 2011, ¶¶ 1, 4, 6.) That is, Syncora asserts that HSBC was "instruct[ed]" by Omega not to pay, and did not pay, "certain insurance premiums that are due and owing to Syncora" under the Insurance Agreement and the Premium Letter, and that HSBC breached

its fiduciary duty owed to Syncora under a certain trust agreement entered into among HSBC, Omega, and others on December 14, 2005 ("Trust Agreement"). (Compl. ¶¶ 1, 4, 6, 39.)

On September 16, 2011, HSBC filed (amended) counterclaims against Syncora for fraudulent inducement, breach of contract, breach of implied covenant of good faith and fair dealing, and seeking declaratory judgment, which are nearly identical to the counterclaims asserted by Omega against Syncora in the ICC Arbitration. HSBC alleges that Syncora failed to disclose the risks associated with Syncora's investments in CDOs and RMBS; that these investments caused Syncora's credit ratings to "decline[ ] dramatically," which "affected the ratings of the bond offering insured by Syncora"; that Syncora became "unable to fulfill its duties" under the Insurance Agreement due to the NYID Order; that Syncora did not respond to HSBC's and Omega's requests for additional financial information and "continued to demand, and receive, payment of the premiums under the Insurance Agreement[ ]"; and that HSBC was instructed to cease premium payments to Syncora and to terminate the Insurance Agreement because of Syncora's "inability to perform." (Am. Ans. & Countercls. ¶¶ 1, 4, 14, 23.)

On September 19, 2011, Syncora filed a motion to direct HSBC to deliver certain assets into the Court Registry Investment System pursuant to N.Y. C.P.L.R. § 2701, arguing, among other things, that "an order directing the Trustee to pay those funds into the Court pending adjudication of the dispute is warranted pursuant to the

operate only in the ordinary course and as necessary to effectuate [a] restructuring" due to an "impairment of its required minimum surplus to policyholders." (Decl. of Kenneth E. Lee, dated Oct. 17,2011 ("Lee Decl."), Ex. 1, at 2.) It was not until June 17, 2010 that

the New York State Insurance Department issued an order reinstating Syncora's ability to pay claims and stating that Syncora "consummated, among other things, a comprehensive restructuring." (Lee Decl., Ex. 1, at 2.)

plain language of § 2701(1)." (Mem. of Law in Supp. of Pl.'s Mot. for an Order Directing Def. to Deliver Trust Assets, dated Sept. 19, 2011 ("Pl. Assets Mem."), at 7,) On October 10, 2011, HSBC filed an opposition, arguing, among other things, that HSBC "is neither a trustee for Syncora, nor does it hold property that 'belongs or is due' to Syncora .... as Plaintiff is no longer a beneficiary under the Trust Agreement." (Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for an Order to Deliver Trust Assets, dated Oct. 10, 2011 ("Def. Assets Mem."), at 5.) [2]

On September 26, 2011, HSBC filed a motion to compel arbitration with Syncora, or to stay or dismiss this case, arguing, among other things, that (1) Section 8.9 of the Insurance Agreement is an arbitration clause ("Insurance Agreement Arbitration Clause") that requires Syncora to arbitrate its claims for breach of fiduciary duty, breach of duty of good faith, declaratory judgment, indemnification, and promissory estoppel; [3] (2) Syncora's breach of fiduciary duty is arbitrable under Section 30.2 of the Trust Agreement ("Trust Agreement Arbitration Clause") to which Syncora "should be bound" even though it is not a signatory; (3) a stay is warranted in light of Syncora's pending ICC Arbitration against Omega because "there is little, if any, legitimate reason to continue with two parallel proceedings that involve exactly the same requests for relief on both sides and could potentially result in conflicting decisions"; and (4) this case should be dismissed for lack of proper service because Syncora "purported to serve process on HSBC via FedEx." (Def.'s Mem. of Law in Supp. of Its Mots. to Compel Arbitration, Stay, and/or Dismiss the Litig., dated Sept. 26, 2011 ("Def. Mem."), at 10, 12, 17, 21.)

On October 17, 2011, Syncora opposed HSBC's motion to compel arbitration, stay, or dismiss and also moved for judgment on the pleadings and to dismiss HSBC's counterclaims pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing, among other things, that (1) the Insurance Agreement Arbitration Clause "provides that certain disputes, such as disputes relating to the payment of premiums, may be brought in federal or state court in New York," and "[a]ll the causes of action in the Complaint clearly 'relate' to HSBC's failure to pay"; (2) Syncora's breach of fiduciary duty claim also "derive[s] from and [is] explicitly based upon, HSBC's failure to pay Syncora" and "may be brought in federal or state court in New York"; (3) a stay would serve "no valid purpose" because "the parties explicitly agreed that certain disputes could be resolved in arbitration and other disputes (such as those relating to the payment of premiums) could be resolved in federal or state court in New York"; (4) HSBC "consented to personal jurisdiction in this Court .... [b]y agreeing that disputes relating to the payment of premiums could be litigated in this Court," and Section 8.3 of the Insurance Agreement provides "that notices to the parties shall be 'by an internationally recognized overnight courier service for overnight delivery'"; (5) "judgment should be entered in Syncora's favor on the breach of contract and indemnification claims"; and (6) "HSBC's counterclaims should be dismissed in their entirety." (Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings and to Dismiss Counterclaims and in Opp'n to Def.'s Mots. to

---

**2.** On October 14, 2011, Syncora filed a reply. (*See* Reply Mem. of Law in Further Supp. of Pl.'s Mot. for an Order Directing Def., to Deliver Trust Assets, dated Oct. 14, 2011 ("Pl. Assets Reply"), at 3.)

**3.** HSBC concedes that Syncora's breach of contract claim may be brought before this Court rather than in arbitration. (Def. Mem. at 6.)

Compel Arbitration, Stay and/or Dismiss the Litig., dated Oct 17, 2011 ("Pl. Mem. & Opp'n"), at 6, 11, 17, 1819.) [4]

The parties waived oral argument. (*See* Hr'g Tr., dated Sept. 12, 2011, at 6:5–11; Hr'g Tr., dated Sept. 19, 2011, at 6:1–4.)

**For the reasons set forth below, Plaintiff's motion to direct Defendant to deliver assets to the Court is denied, Defendant's motion to compel arbitration, stay, or dismiss is granted in part and denied in part, and Plaintiffs motion for judgment on the pleadings and to dismiss Defendant's counterclaims is denied without prejudice.**

## III. Legal Standard

The Federal Arbitration Act ("FAA") provides that an arbitration agreement in any "contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v. Brown,* —— U.S. ——, 132 S.Ct. 1201, 1203, 182 L.Ed.2d 42 (2012).

■ "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.... However, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *In re Am. Exp. Fin. Advisors Sec. Litig.,* 672 F.3d 113, 127–28 (2d Cir.2011) (internal citations and quotation marks omitted). "[L]anguage excluding certain disputes from arbitration must be 'clear and unambiguous' or 'unmistakably clear' and ... arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Wire Service Guild, Local 222, Newspaper Guild, AFL–CIO v. United Press Int'l, Inc.,* 623 F.2d 257, 260 (2d Cir.1980). "Whether or not a matter is arbitrable is a matter for judicial determination." *Spear, Leeds & Kellogg v. Cent. Life Assurance Co.,* 85 F.3d 21, 25 (2d Cir.1996).

"Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 856 (2d Cir.1987).

## IV. Analysis

■ Preliminarily, HSBC's argument that Syncora did not properly serve process on HSBC (via FedEx) is unpersuasive. (Def. Mem. at 17.) As Syncora points out, HSBC consented to using FedEx as a means of service in Section 8.3 of the Insurance Agreement which provides that "all notices, requests and demands ... shall be deemed to have been duly given or made if delivered ... by an internationally recognized overnight courier service for overnight delivery," (Betancourt Decl. Ex. 2, § 8.3; *see* Pl. Mem. & Opp'n at 19); *Mastec Latin Am. v. Inepar S/A Industrias E Construcoes,* 03 Civ. 9892, 2004 WL 1574732, at *3 (S.D.N.Y. July 13, 2004); *see also Waterspring, S.A. v. Trans Mktg. Houston Inc.,* 717 F.Supp. 181, 186 (S.D.N.Y.1989); *Lawn v. Franklin,* 328

---

4. On November 7, 2011, HSBC filed an opposition to Syncora's motion for judgment on the pleadings and to dismiss HSBC's counterclaims and a reply in support of its motion to compel arbitration, stay, or dismiss. (*See* Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for J. on the Pleadings and to Dismiss Counterclaims and Reply Mem. in Supp. of Def.'s Mots. to Compel Arbitration, Stay and/or Dismiss, dated Nov. 7, 2011 ("Def. Opp'n and Reply").) And, on November 17, 2011, Syncora filed a reply in support of its motion for judgment on the pleadings and to dismiss HSBC's counterclaims. (*See* Reply Mem. of Law in Further Supp. of Pl.'s Mot. for J. on the Pleadings and to Dismiss Def.'s Counterclaims, dated Nov. 17, 2011 ("Pl. Reply").)

F.Supp. 791, 794 (S.D.N.Y.1971) ("Where there is advance consent to the jurisdiction by contract the service of process may be made by any method consistent with due process.").

### (1) Deposit of Assets

Syncora argues that because "HSBC is holding the funds in its capacity as [t]rustee on behalf of Syncora pursuant to the Insurance Agreement[ ] and claims no personal right in those funds, an order directing [HSBC] to pay those funds into the Court pending adjudication of the dispute is warranted pursuant to the plain language of § 2701(1)." (Pl. Assets Mem. at 7.) HSBC argues that HSBC is "neither a trustee for Syncora, nor does it hold property that 'belongs or is due' to Syncora." (Def. Assets Opp'n at 5.)

N.Y. C.P.L.R. § 2701(1) "authorizes a court to order money paid in the court during the pendency of the action where 'a party has such property in his possession, custody or control as trustee for another party or where it belongs or is due to the other party.'" *Borders Elecs. Co., Inc. v. Whirlpool Corp.*, 531 F.Supp. 125, 127 (S.D.N.Y.1982). In order to prevail on a motion pursuant to Section 2701, a plaintiff must "clearly establish" that the defendant is "either a trustee for the plaintiff[ ] or that the money is due to the plaintiff[ ]." *Id.* at 128.

■ Syncora has not clearly established that HSBC is a trustee for Syncora or that alleged trust assets are due to Syncora— indeed, these issues are very much in dispute. *See Delta Air Lines, Inc. v. Tie Cargo Corp.*, No. 96 Civ. 3792, 1996 WL 1088913, at *4 (E.D.N.Y. Oct. 8, 1996). HSBC contests Syncora's claim that HSBC is a trustee for Syncora and argues that Syncora "is no longer a beneficiary under the Trust Agreement" because Syncora was unable to perform under the Insurance Agreement. (Def. Assets Opp'n

at 3.) And, because the question of whether HSBC is (still) a trustee for Syncora is "precisely what this case is about," an order directing HSBC to deliver trust assets to the Court under Section 2701 is, at best, premature. *Delta Air Lines*, 1996 WL 1088913, at *4; *see Borders*, 531 F.Supp. at 128 ("Plaintiffs, other than their allegations, have not established that the defendants are trustees of their property or hold property belonging to them. To apply [§ 2701] would, in effect, be giving the plaintiffs in advance of judgment the benefit of an attachment . . . .").

### (2) Arbitration Pursuant to the Trust Agreement

HSBC argues that Syncora's breach of fiduciary duty claim arises under the Trust Agreement which contains an arbitration clause to which Syncora "should be bound" even though it is not a signatory. (Def. Mem. at 12–13.) Syncora counters that arbitration is not called for because the Insurance Agreement Arbitration Clause "provides that certain disputes, such as disputes relating to the payment of premiums, may be brought in federal or state court in New York," and that "[a]ll the causes of action in the Complaint clearly 'relate' to HSBC's failure to pay." (Pl. Mem. & Opp'n at 17.)

■ "The summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability." *General Motors Corp. v. Fiat S.p.A*, 678 F.Supp.2d 141, 145 (S.D.N.Y.2009) (internal quotation marks omitted). "In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp.*, 672 F.3d at 128. "If the allegations underlying the claims touch matters covered by the parties'

agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 75 (2d Cir.1997) (internal quotation marks omitted). A nonsignatory "is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause." *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.,* 170 F.3d 349, 353 (2d Cir.1999).

■ The Trust Agreement Arbitration Clause requires arbitration of Syncora's breach of fiduciary duty claim. *See In re Am. Exp.,* 672 F.3d at 127–28. The Trust Agreement contains a valid agreement to arbitrate to which Syncara is "bound ... even in the absence of a signature." *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,* 9 F.3d 1060, 1064 (2d Cir.1993), Section 30.2 of the Trust Agreement provides in relevant part:

> b. Any controversies arising pursuant to this Trust Agreement ... shall be finally resolved by arbitration under the Rules of Arbitration of the International Chamber of Commerce

(Betancourt Deck, Ex. 1, § 30.2.) Although it is a nonsignatory, Syncora is estopped from denying its obligation to arbitrate because it received a "direct benefit" from the Trust Agreement. *Tencara,* 170 F.3d at 353. That is, Section 4,1 of the Trust Agreement specifically provided that Syncora's predecessor, XL Capital, was one of the "beneficiaries" of the Trust. (Betancourt Decl., Ex. 1, § 4.1); *see Tencara,* 170 F.3d at 353; *Deloitte,* 9 F.3d at 1064.

Syncora's breach of fiduciary duty claim falls within the broad scope of the Trust Agreement Arbitration Clause which covers "[a]ny controversies arising pursuant to [the] Trust Agreement." (Betancourt Decl., Ex. 1, § 30.2.) This claim alleges that HSBC, "as [t]rustee, owes Syncora a fiduciary duty" under the Trust Agreement, and that HSBC "breached its fiduciary duty owed to Syncora" (Compl. ¶¶ 39–40), and falls within the plain meaning of "[a]ny controvers[y] arising pursuant to [the] Trust Agreement," (Betancourt Deck, Ex. 1, § 30.2). *See WorldCrisa,* 129 F.3d at 74.[5]

**5.** Syncora correctly notes that Section 8.9(i) of the Insurance Agreement "reserves the parties' right to bring disputes relating to, *inter alia,* the payment of [insurance] premiums, in federal or state court in New York." (Pl. Mem. & Opp'n at 16.) But Section 8.9(i) does not "unambiguously and unmistakably preclude[]" arbitration of Syncora's breach of fiduciary duty claim. *Wire Service,* 623 F.2d at 260 ("[L]anguage excluding certain disputes from arbitration must be 'clear and unambiguous' or 'unmistakably clear.'"). Section 8.9 provides in relevant part:

(a) Any dispute, controversy or claim arising out of, relating to, or in connection with this Agreement ... shall be settled by arbitration in accordance with the terms hereof....

(i) Notwithstanding the foregoing, if ... [Syncora] seeks payment of any premium that has not been paid when due, then either [HSBC] or [Syncora] may submit any dispute relating to such reimbursement or

payment to any federal or state court sitting in New York City, New York.

(Betancourt Decl., Ex. 2, § 8.9.) The Court finds that Section 8.9(i) "provides for only a narrow exception" to arbitration, excluding only those claims that seek "reimbursement" of premiums. *Roso–Lino Beverage Distribs., Inc. v. Coca–Cola Bottling Co. of New York,* 749 F.2d 124, 126 (2d Cir.1984) (When presented with "only a narrow exception, a court should compel arbitration unless there is positive, unambiguous assurance that the dispute is within that narrow exception."); (*see* Betancourt Decl., Ex. 2, § 8.9; Def. Opp'n & Mem. at 20.) Syncora's breach of fiduciary duty claim is broader. It does not seek "reimbursement" of premiums but rather challenges the underlying validity and enforceability of the Insurance Agreement in the wake of Syncora's financial crisis and the NYID order directing Syncora to suspend payment on all of its claims, (Betancourt Decl., Ex. 2, § 8.9(i); *see* Compl. ¶¶ 39–40.) If the Court were to read Section 8.9(i) to apply to any

Moreover, because "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *In re Am. Exp.*, 672 F.3d at 128, the Court finds that the Trust Agreement compels arbitration of Syncora's breach of fiduciary duty claim.

### (3) Arbitration Pursuant to the Insurance Agreement

HSBC argues that Syncora's breach of duty of good faith, declaratory judgment, indemnification, and promissory estoppel claims should also be arbitrated under Section 8.9(a) of the Insurance Agreement. (Def. Mem. at 511.) Syncora does not dispute that Section 8.9(a) is a valid agreement to arbitrate between Syncora and HSBC but argues that those claims "clearly 'relate' to HSBC's failure to pay" insurance premiums and may be brought in this Court under Section 8.9(i) of the Insurance Agreement. (Pl. Mem. & Opp'n at 17); *see supra* note 5.

■ The Court finds that Syncora's breach of duty of good faith, indemnification, and promissory estoppel claims should also be arbitrated under Section 8.9(a) of the Insurance Agreement. *See In re Am. Exp.*, 672 F.3d at 127–28. Those claims allege that HSBC breached "its contractual obligations . . . to Syncora under cover of an improper 'instruction' from Omega . . . in direct contravention of the [Insurance Agreement]" (Compl. ¶ 7) and fall within the broad scope of the Insurance Agreement Arbitration Clause which covers "[a]ny dispute, controversy or claim arising out of, relating to, or in connection with" the Insurance Agreement. (Betancourt Decl., Ex. 2, § 8.9(a)); *see WorldCrisa*, 129 F.3d at 74.

Section 8.9(i) of the Insurance Agreement does not "unambiguously and unmistakably" except Syncora's breach of duty of good faith, indemnification, and promissory estoppel claims from arbitration for substantially the same reasons set forth in Section IV.2 at n. 5. *Wire Service Guild*, 623 F.2d at 260; *see Roso–Lino*, 749 F.2d at 126. The allegations underlying those claims are far broader than "reimbursement" of insurance premiums. (Betancourt Decl., Ex. 2, § 8.9(i).) They speak to the underlying validity and enforceability of the Insurance Agreement in the wake of Syncora's financial crisis and the NYID order directing Syncora to suspend payment on all of its claims. *See supra* Section II; (Compl. ¶¶ 67, 21; Am. Ans. & Countercls. ¶¶ 1, 4, 14, 23, Ex. A.)

■ At the same time, Syncora's breach of contract claim, and its declaratory judgment claim under 28 U.S.C. § 2201(a), do fall within the narrow exception of Section 8.9(i) for the direct "reimbursement" of insurance premiums. (Compl. ¶ 42; *see* Def. Mem. at 6 (conceding that "Plaintiffs first cause of action for breach of contract" is for "payment of any Premium that has not been paid when due"); Pl. Mem. & Opp'n at 16 ("HSBC[ ] conce[des] that the first cause of action, breach of [contract] . . . is based on

---

claim that has any relation whatsoever to the reimbursement of premiums—however tangential—then "every conceivable claim" brought under the Insurance Agreement would be excepted which would render Section 8.9(a) superfluous. (Def. Opp'n & Reply at 21); *see Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 124 (2d Cir.2003) ("[U]nder New York law an interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.' "); *Thomas James Assocs., Inc. v. Jameson*, 102 F.3d 60, 65 (2d Cir.1996). The Court has "no positive, unambiguous assurance" that the parties intended to limit either Section 8.9(a) or the Trust Agreement Arbitration Clause. *Roso–Lino*, 749 F.2d at 126; *see Wire Service Guild*, 623 F.2d at 260.

HSBC's failure to pay" insurance premiums); *supra* note 3.)

### (4) Stay Pending Arbitration

██ Having found that Syncora's breach of fiduciary duty, breach of duty of good faith, indemnification, and promissory estoppel claims should be arbitrated, the Court hereby stays the balance of these proceedings pending arbitration. *See Genesco*, 815 F.2d at 856. A stay is warranted because the arbitrable claims "predominate the lawsuit, both in quality and quantity." *Rivard Graphics Supply & Equip., Inc. v. Hull Printing Co., Inc.*, 994 F.Supp. 118, 121 (D.Conn.1998).

Syncora's (arbitrable) claims against HSBC are substantially similar to Syncora's claims against Omega in the ICC Arbitration. *See supra* Section II. Their disposition will clearly inform the resolution of—if not dispose of—Syncora's remaining breach of contract claim and its declaratory judgment claim against HSBC. *See Midland Walwyn Capital Inc. v. Spear, Leeds & Kellogg*, No. 92 Civ. 2236, 1992 WL 249914, at *2 (S.D.N.Y. Sept. 22, 1992) ("The courts in this district have consistently granted stays pending arbitration where the nonarbitrable issues overlap the arbitrable issues, thus minimizing inconsistent results and conserving judicial resources."); *Hikers Indus., Inc. v. William Stuart Indus. (Far East) Ltd.*, 640 F.Supp. 175, 178–79 (S.D.N.Y.1986) ("[T]he arbitration will provide the court with insight into the issues of law and fact" and prevent "any decisions by this court on the merits of the claims . . . [from] thwart[ing] the federal policy in favor of arbitration of disputes by rendering the arbitrator's interpretation . . . meaningless.").

### (5) Motion for Judgment on the Pleadings

In light of the stay, *see supra* Section IV.4, Syncora's motion for judgment on the pleadings and to dismiss HSBC's counterclaims is denied without prejudice. *See Wu v. Pearson Educ., Inc.*, No. 09 Civ. 6557, 2010 WL 3791676, at *6 (S.D.N.Y. Sept. 29, 2010).

## V. Conclusion & Order

For the foregoing reasons, Plaintiffs motion to direct Defendant to deliver trust assets to the Court [# 12] is denied; Defendant's motion to compel arbitration, stay, or dismiss [# 19] is granted in part and denied in part as follows:

(i) Defendant's motion to compel arbitration as to Syncora's breach of fiduciary duty, breach of duty of good faith, indemnification, and promissory estoppel claims is granted,

(ii) Defendant's motion to compel arbitration as to Syncora's declaratory judgment claim is denied,

(iii) Defendant's motion to stay is granted,

(iv) Defendant's motion to dismiss for lack of proper service is denied; and Plaintiff's motion for judgment on the pleadings and to dismiss Defendant's counterclaims [# 26] is denied without prejudice.

Upon the completion of the ICC Arbitration, the parties are directed to inform the Court by letter of the outcome of the arbitration.